Archie **PELTZMAN**, Plaintiff-
Appellant,

v.

**CENTRAL GULF LINES, INC.,**
Defendant-Appellee.

No. 942, Docket 74-1162.

United States Court of Appeals,
Second Circuit.

Argued May 1, 1974.

Decided May 21, 1974.

Archie Peltzman, plaintiff-appellant,
pro se.

Richard P. Lerner, New York City
(James A. Flynn, and Lorenz, Finn,
Giardino & Lambos, New York City, of
counsel), for defendant-appellee.

Before WATERMAN, FRIENDLY and MULLIGAN, Circuit Judges.

PER CURIAM:

Archie Peltzman, a marine radio officer, brought this action in the District Court for the Southern District of New York, seeking damages and injunctive relief against his former employer, Central Gulf Lines, Inc. Appearing pro se, Peltzman raised a myriad of claims before the district court based on maritime law, the New York and federal constitutions, the antitrust laws, and the collective bargaining agreement between the employer and Peltzman's union, the American Radio Association. In essence, his claim was that the employer unlawfully acceded to a union request that he be discharged for failing to pay a $2,000 union initiation fee.

I.

The facts, as appellant presents them, are as follows: From 1943 through 1949, Peltzman was a member of the American Communications Association, the predecessor of the American Radio Association. In 1949 the Coast Guard refused to issue him a radio officer's license on the ground that he was either a member of the Communist Party or a communist sympathizer. Without a license, Peltzman was ineligible to serve as a radio officer in the Merchant Marine. In 1967, he brought an action in federal court in the course of which the Coast Guard agreed to reissue him a license, see Peltzman v. Smith, 404 F.2d 335 (2 Cir. 1968). He subsequently sought reinstatement in the union as a full-fledged member. At that time, the union issued him a permit card which entitled him to sail for a year without having to pay the union's $2,000 initiation fee. At the end of the year, however, the union demanded that Peltzman pay the fee. Peltzman refused, insisting that since he was a former member of the union, he should be liable only for a "withdrawal fee," equal to one year's dues. Others who had rejoined the union after a long layoff, Peltzman insisted, had not been required to pay the full initiation fee.

Before the dispute was settled, Peltzman received a permanent assignment on the S/S Green Ridge, one of Central Gulf's vessels. He made three trips on the Green Ridge and then requested a one-trip vacation leave, as provided for in the collective bargaining agreement. At that time, the union demanded the $2,000 initiation fee and the employer indicated that he would not be rehired without obtaining clearance from the union. Peltzman then began a series of legal actions in an effort to save his job. He first took his claim to the National Labor Relations Board. When the Regional Director declined to file a complaint with the Board and the General Counsel affirmed the Regional Director's decision, Peltzman appealed to this court. We dismissed the appeal from the bench, and the Supreme Court denied certiorari. Peltzman v. NLRB, No. 72–1091 (2 Cir.), cert. denied, 409 U.S. 887, 93 S.Ct. 112, 34 L.Ed.2d 143 (1972).[1] While his claim was pending before the General Counsel, Peltzman brought suit against the union in the New York courts. The trial court declined jurisdiction over the matter, holding that it was within the exclusive jurisdiction of the Board, and the appellate division affirmed without opinion. Peltzman v. American Radio Association, 69 Misc.2d 17, 327 N.Y.S.2d 505 (S.Ct.N.Y.Co.), aff'd, 40 A.D.2d 631, 335 N.Y.S.2d 998 (1st Dep't 1971), cert. denied, 411 U.S. 916, 93 S.Ct. 1547, 36 L.Ed.2d 308 (1973).

Failing to obtain relief in those two forums, Peltzman next brought his case to the federal court. In the court below,

---

1. Our summary dismissal of Peltzman's appeal was doubtless based on the well-settled principle that the General Counsel's determination not to issue a complaint on an unfair labor practice charge is unreviewable, see Vaca v. Sipes, 386 U.S. 171, 182, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); United Electrical Contractors Ass'n v. Ordman, 366 F.2d 776 (2 Cir. 1966), cert. denied, 385 U.S. 1026, 87 S.Ct. 753, 17 L.Ed.2d 674 (1967).

however, he fared no better than in his previous efforts. On defendant's motion, the district court granted summary judgment against Peltzman on at least three independent grounds. First, the court held that since his complaint was founded on conduct that would arguably constitute an unfair labor practice, Peltzman's claims were subject to the exclusive jurisdiction of the National Labor Relations Board. Second, it held that the judgment against him in the New York courts operated as a jurisdictional bar to his maintaining the action in federal court. The court next suggested that since the General Counsel had refused to issue a complaint on Peltzman's application, he would probably be barred from bringing this action in court.[2] On the merits, the court concluded without discussion that "defendant's refusal to rehire plaintiff was lawful under the circumstances." The court did not reach the further defense that Peltzman had failed to exhaust contractual grievance procedures and that such failure should bar his present action. On that point, the court held that the exhaustion defense raised material disputed issues of fact. We reverse the judgment of the district court and remand for a determination whether the collective bargaining agreement provides Peltzman any basis for relief.

## II.

Most of Peltzman's arguments can be dealt with summarily. Nothing in maritime law renders illegal a discharge that is authorized under a legitimate union security clause. There is no colorable basis for an antitrust claim in this case. The security clause here is not subject to attack under the federal or New York constitutions, see NLRB v. General Motors Corp., 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963); Buckley v. AFTRA, 496 F.2d 305 (2 Cir.

1974); Linscott v. Millers Falls Co., 440 F.2d 14 (1 Cir.), cert. denied, 404 U.S. 872, 92 S.Ct. 77, 30 L.Ed.2d 116 (1971). And any claim that the company has committed an unfair labor practice in discharging him would plainly be subject to the exclusive jurisdiction of the NLRB.

Peltzman's breach of contract claim, however, is not so easily dismissed. While his pleading is not as concise as could be hoped, his breach of contract claim is founded on his assertion that he *was* a member of the union when he was discharged, and that the union was thus not entitled to demand an initiation fee from him—a demand which he alleges was not made of others in his position, see Cunningham v. Erie R. R., 358 F.2d 640, 643–645 (2 Cir. 1966). If his allegations are correct, the union security clause in the collective bargaining agreement would not authorize his discharge, and other provisions, such as the nondiscrimination clause, would arguably provide him a contractual basis for regaining his job.

It is well settled that contract claims brought under § 301(a) of the Labor Management Relations Act are not subject to preemption by the National Labor Relations Board, see Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964) (breach of duty of fair representation cognizable under § 301(a) if it involves a violation of the collective bargaining agreement). Similarly, the decision of the General Counsel not to file a complaint on Peltzman's behalf has no res judicata effect, as it is not a final judgment on the merits, see Aircraft & Engine Maintenance Employees, Local 290 v. E. I. Schilling Co., 340 F.2d 286, 289 (5 Cir. 1965), cert. denied, 382 U.S. 972, 86 S.Ct. 529, 15 L.Ed.2d 465 (1966); Thomas v. Con-

2. The district court expressed some doubt that the General Counsel's refusal to issue a complaint would provide an independent basis for granting summary judgment, but held

that since the action was subject to the Board's exclusive jurisdiction, it did not have to decide the effect of the General Counsel's decision.

solidation Coal Co., 380 F.2d 69, 77–78 (4 Cir.), cert. denied, 389 U.S. 1004, 88 S.Ct. 562, 19 L.Ed.2d 599 (1967); International Union of Electrical Workers v. General Electric Co., 407 F.2d 253, 264 (2 Cir. 1968), cert. denied, 395 U.S. 904, 89 S.Ct. 1742, 23 L.Ed.2d 217 (1969). Finally, the New York court's jurisdictional dismissal of Peltzman's action against his union does not bar him from bringing this suit. The New York court apparently dismissed his action against the union on the ground that Peltzman had alleged only unfair labor practices. Had he raised an independent federal claim, such as a breach of the duty of fair representation, it would clearly have been cognizable in that forum, see Vaca v. Sipes, 386 U.S. 171, 176–184, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Amalgamated Association of Street Employees v. Lockridge, 403 U.S. 274, 299–301, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971).[3]

■ Peltzman's claim on the merits may well turn out to be without force. If the initiation fee was uniformly required by the union constitution and by-laws, and was regularly demanded of those in his position, then it is likely that the union security clause was properly invoked and that the contract claim must fail. While the district court may have explored these possibilities below, we are not confident that its brief statement that "the defendant's refusal to hire plaintiff was lawful under the circumstances" reflects a careful considera-

tion of Peltzman's contract claim and a determination that he had raised no material questions of fact on that issue.[4] We therefore remand this case for the district court to determine whether Central Gulf breached the collective bargaining agreement, and, if so, whether Peltzman's apparent failure to exhaust contractual grievance procedures should bar him from maintaining this suit.[5]

Reversed and remanded.

---

3. The state court apparently placed some weight on the fact that Peltzman's unfair labor practice claim was still pending before the General Counsel, 69 Misc.2d at 22, 327 N.Y.S.2d at 510. In light of that consideration, we think it particularly inappropriate to accord the state court decision any preclusive effect in this suit.

4. Had the defendant addressed itself more directly in its moving papers to Peltzman's contract claim, it might have been able to establish that there was no factual dispute over Peltzman's status as a union member. However, the defendant chose to stress the collateral estoppel and res judicata elements of this case and to present only brief and conclusory allegations concerning the merits of the contract claim.

5. Peltzman argues that he should be excused from the normal requirement that he exhaust the contractual grievance procedures, see Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), because it was the union that instigated the company's alleged breach of contract. If the district court should find that Peltzman's contract claim is a good one, it should then determine whether he should be excused from the exhaustion requirement because of a breach of the duty of fair representation by the union, Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), or because his pursuit of grievance proceedings, through the union, would plainly have been futile, see Glover v. St. Louis-San Francisco Ry., 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969).