In the Matter of the Arbitration between **ANK SHIPPING CO. OF GREECE,** Owner of the M/V "EAGLE," Petitioner,

and

**SEYCHELLES NATIONAL COMMODITY CO., LTD.,** Respondent.

No. 84 Civ. 3768–CSH.

United States District Court, S.D. New York.

Nov. 5, 1984.

Dickerson, Reilly & Mullen, New York City, for petitioner; Robert W. Mullen, New York City, of counsel.

Burlingham, Underwood & Lord, New York City, for respondent; Robert J. Zapf, Lance A. Warrick, New York City, of counsel.

## MEMORANDUM OPINION
## AND ORDER

HAIGHT, District Judge:

This is a petition pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* by Ank Shipping Co. of Greece ("Ank") to compel respondent Seychelles National Commodity Co., Ltd. ("Seychelles") to arbitrate disputes arising out of a maritime contract of charter party. Seychelles cross-moves to dismiss the petition and to assess attorney's fees and disbursements against Ank.

The litigation arises out of an ill-starred voyage in May and June of 1982 of the M/V EAGLE, owned by Ank. Indeed, it appears from the motion papers that this was the last voyage of the EAGLE under Ank's ownership.

By charter party dated May 5, 1982, Ank chartered the EAGLE to Seychelles to carry a cargo of bagged sugar from Sagua de Tanamo, Cuba to Mahe, Republic of Seychelles. The Seychelles Islands are located in the Indian Ocean, about 1,000 kilometers to the northeast of Madagascar.

The EAGLE completed loading at Sagua de Tanamo on or about May 24, 1982, the master issuing bills of lading on that date. On May 27 Ank's agent billed Seychelles and received prepaid freight of $261,250, that sum representing 95% of the total charter freight.

However, the EAGLE did not progress particularly far in her voyage. For reasons which do not appear from the present record, she put into the port of San Juan, Puerto Rico, where on June 25, 1982 she was arrested by a warrant issued by the Clerk of the United States District Court for the District of Puerto Rico. The warrant of arrest was obtained in aid of a suit *in rem* and *in personam* brought by a bunker supplier who furnished bunkers to the EAGLE at Barranquilla, Colombia in November, 1981, and remained unpaid.

Much of the factual discussion appearing in this opinion is adapted from the opinion and order of the Hon. Hector M. Laffitte,

United States District Judge, who conducted the proceedings involving the EAGLE in the District of Puerto Rico, *sub nom. Zeba Maritime Co. v. M.V. EAGLE, etal*, D.P.R. Civ. No. 82–1560HL. Seychelles has attached a copy of Judge Laffitte's opinion and order to its motion papers in the case at bar.

As will appear from the ensuing discussion, Ank was encountering financial difficulties. However, before tracing the course of the Puerto Rican litigation, it is significant to note that disputes had arisen between Ank and Seychelles arising out of events at the Cuban loading port. Ank claimed that Seychelles was liable under the charter party for port expenses and detention incurred at the loading port; and further, that Ank had a lien against the cargo in respect of such claims.

On July 9, 1982, while the vessel was in San Juan, Ank's agents telexed Seychelles' agents as follows:

> "UNLESS BY 1200 HOURS EDT JULY 12, 1982 OWNERS ARE PAID THE CURRENT CHARGES WHICH YOU HAVE RUN UP IN THE AMOUNT OF 89,875.00 DOLLARS, THEY WILL EXERCISE THEIR LIEN AGAINST THE CARGO AND SELL THE SAME ACCOUNTING TO YOU FOR THE BALANCE. THESE ARE LIQUIDATED DAMAGES."

Seychelles' agent responded on July 12, 1982:

> "IN RESPONSE TO YR MESSAGE OF JULY 9 1432H, CHARTERERS HAVE RESPONDED AND REQUEST THAT YOU TAKE NOTE OF CLAUSE 35 OF SUBJECT CONTRACT."

"Clause 35" of the charter party is the arbitration clause. Ank's attorneys responded on July 12 by telex:

> "YOUR TELEX UNFORTUNATELY UNRESPONSIVE. OWNERS AGREE TO ARBITRATION IN NEW YORK FORTHWITH. AS A SECURITY DEVICE OWNERS WILL SELL CARGO AS DEADLINE HAS. CALCULATION OF LIENS NOW TOTAL APPROXIMATELY 160,000 DOLLARS."

Reverting to the litigation in Puerto Rico, on July 12, 1982, the EAGLE's master and fifteen of her crew members filed a complaint in intervention claiming unpaid wages. They asserted maritime liens against the EAGLE and her cargo (the latter, of course, being the property of Seychelles). The master and crew prayed that the cargo and vessel be sold. Seychelles moved to intervene to protect its interests on July 28. Subsequent interventions were filed by the EAGLE's mortgagee, by a former agent, and by the Puerto Rico Ports Authority.

On July 29, Ank filed a claim of owner. I need not rehearse all of the litigation in detail. It is worth noting, however, that under date of August 4, 1982, Ank, through Puerto Rican counsel, served and filed a "crossclaim" against Seychelles, alleging breach of charter at the loading port and asserting claims for loading port fines, charges, expenses, and demurrage. On August 10, Ank filed a complaint *in rem* and *in personam* against the cargo of sugar and Seychelles. The cargo was attached, despite Seychelles' unsuccessful invocation of the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1602–1611. Ultimately Seychelles obtained the release of the cargo by posting bond in the amount of $150,000. Seychelles answered Ank's crossclaim.

Applications were made to the district court for the sale of the EAGLE, and on October 8, 1982, the vessel was sold to the highest and only bidder for the required minimum of $175,000. Seychelles, having obtained the release of its cargo pursuant to bond, had previously transshipped it to the Seychelles Islands on another vessel.

Having been required to post security, Seychelles moved pursuant to Rule E.(7) of the Supplemental Rules for Certain Admiralty and Maritime Claims, requiring Ank to post counter-security in favor of Seychelles in the amount of $150,000. Ank failed to do so, and Seychelles was allowed to withdraw the security it had posted.

Judge Laffitte concluded the litigation in his opinion and order of March 26, 1984. In essence, Ank's charter party claims against Seychelles were rejected, and the judge entered judgment in favor of Seychelles and against Ank for breach of charter, damage to cargo, and related expenses in the amount of $409,069.28.

The last communication worthy of note is a letter dated September 17, 1982, which New York counsel for Ank sent to New York counsel for Seychelles. That letter demanded arbitration in New York, pursuant to clause 35 of the charter party, and nominated an arbitrator on behalf of Ank. It is Seychelles' continuing refusal to appoint an arbitrator, in response to Ank's demand contained in that letter, which gives rise to the present motion and cross-motion.

Seychelles' primary points are that the claims Ank seeks to assert in arbitration are barred by *res judicata;* and that Ank has waived the right to demand arbitration. I consider these arguments in inverse order.

### II.

■ In the circumstances of this case, I decline to hold that Ank waived its right to demand arbitration of the charter party disputes.

The more recent cases considering a contractual right to arbitration under federal arbitration law hold that even a voluntary "commencement of litigation in a judicial forum does not, by itself, constitute a waiver of that right." *Masthead Mac Drilling Corp. v. Fleck,* 549 F.Supp. 854, 856 (S.D. N.Y.1982). In *Masthead* Judge Lasker went on to observe that "a waiver of arbitration under federal arbitration law cannot be found without a showing of substantial prejudice to the party asserting waiver," *ibid,* by which the cases clearly imply prejudice caused by the adversary party's choosing to commence litigation when arbitration was available to it as a matter of contract.

But such cases have no application to the case at bar. Ank cannot be said to have voluntarily commenced in the District of Puerto Rico the litigation involving the EAGLE, her cargo, and the voyage in question. Presumably the last thing Ank wanted was to have the EAGLE arrested by maritime lienors in Puerto Rico, and eventually condemned and sold. It is true that during the course of that litigation Ank asserted the same charter party claims against Seychelles as it now seeks to arbitrate; but Ank was obliged to assert such claims, in an effort to protect its interests within the context of litigation forced upon it by others. And it follows from this self-evident analysis that the litigation expense incurred by Seychelles during the Puerto Rico litigation (while arguably economically prejudicial, although resulting in a favorable judgment) was not caused by any voluntary act on the part of Ank. If, as the more recent cases hold, voluntary commencement of litigation does not *ipso facto* constitute a waiver of arbitration, *a fortiori* this is true where, as here, the party said to have waived its right to arbitrate was brought into litigation against its will. To find waiver in these particular circumstances would be inequitable, and run contrary to the "overriding federal policy favoring arbitration," *Carcich v. Rederi A/D Nordic,* 389 F.2d 692, 696 (2d Cir.1968). I am strengthened in this conclusion by Ank's telex of July 12, 1982 and its letter of counsel of September 12. Both communications, written during the heat and distraction of the Puerto Rican litigation, reflect Ank's acknowledgment of and insistence upon the contractual right to arbitration.

### III.

■ Although for the reasons stated Ank has not waived its right to compel arbitration, I conclude that its petition to compel must be denied on the ground of *res judicata.*

It is well established that prior adjudication of the merits of disputes in another forum "may affect any decision to compel arbitration." *Sprague & Rhodes Commodity Corp. v. Instituto Mexicano del*

*Cafe*, 566 F.2d 861, 862 (2d Cir.1977). *Sprague* holds that if a party seeking to compel arbitration previously entered an appearance in judicial proceedings which "provided a valid jurisdictional underpinning for the judgment" entered in those proceedings, then the party seeking arbitration "has no right to contest in a collateral action [such as arbitration] the jurisdiction of that court"; and that is so even if the judgment was entered on default. *Id.* at 862–63. In reaching those conclusions, the Second Circuit in *Sprague* relied in part upon *Freemont Cake & Meal Co. v. Wilson & Co.*, 183 F.2d 57 (8th Cir.1950), in which the Eighth Circuit, declining to compel arbitration after resolution of the underlying disputes in litigation, said this:

> "... it may be observed that before this proceeding was instituted the actual substantive controversy between the parties had already been adjudicated by a court having jurisdiction both of the parties and the subject matter. There was no remaining substantive controversy between the parties. The only controversy here involved is as to the procedure by which the actual controversy should be determined. The controversy itself having been adjudicated, the proceeding to determine the procedure came too late as there was no controversy to arbitrate."

In the case at bar, although Ank did not commence the judicial proceedings involving the EAGLE in Puerto Rico voluntarily, it did appear in those proceedings and filed pleadings advancing the very claims which it now seeks to arbitrate. It is equally clear that Judge Laffitte's opinion and order previously referred to, as well as the implementing final judgment dated April 3, 1984, resolved those claims contrary to Ank and in favor of Seychelles. The District of Puerto Rico having had jurisdiction both of the parties and the subject matter, *res judicata* applies as to the claims pleaded between the parties, as well as to any other claims arising out of the subject matter of the action which could have been asserted.

Ank's petition to compel arbitration is barred by *res judicata*.

## IV.

The briefs raised two other issues which may be briefly noted.

Seychelles claims that service of the petition to compel arbitration was insufficient. Since the petition is in any event barred by *res judicata*, I need not consider the question further, although it is well established that Seychelles, having agreed to arbitration in New York, consented to subject matter and personal jurisdiction in New York.

Seychelles prays for sanctions, including attorney's fees against Ank pursuant to the 1983 amendments to Rule 11, F.R.Civ.P. I deny that application. I have rejected Seychelles' claim of waiver; and while the circumstances of the case appear to me to call for application of the *res judicata* doctrine, the involuntary nature of the proceedings in Puerto Rico and Ank's agreement to arbitration in its counsel's telex of July 12, 1982, quoted *supra*, rendered Ank's efforts to escape *res judicata* at least arguable. It is also worth noting that, in its original motion papers, when arguing for waiver, Seychelles made no reference to the July, 1982 exchange of telexes. Those communications were obviously germane to the waiver issue, and it was disingenuous of Seychelles' counsel not to refer to them. The Court should not have had to wait until Ank's reply papers to learn of this exchange. In these circumstances, I would have stifled any inclination to make a Rule 11 award in Seychelles' favor that I might otherwise have entertained.

## CONCLUSION

The Clerk of the Court is directed to enter an order dismissing the petition with prejudice and without costs.

It is SO ORDERED.