**HUDSON–BERLIND CORP., Petitioner,**

v.

**LOCAL 807, AFFILIATED WITH the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Respondents.**

No. CV 84–0049.

United States District Court,
E.D. New York.

Nov. 27, 1984.

Milman, Naness & Pollack by Martin Gringer, Hewlett, N.Y., for petitioner.

O'Connor & Mangan, P.C. by J. Warren Mangan, Long Island City, N.Y., for respondents.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an action for a stay of arbitration. Both parties have moved for summary judgment.

### I. FACTS

Petitioner is a corporation engaged in the distribution of housewares. Respondent is a labor organization.

Prior to 1981 petitioner was located at Hicksville, New York. Petitioner's trucking was done by P & Z Transportation Co., Inc., whose drivers were represented by respondent.

Petitioner and P & Z, as joint employers, entered into a collective bargaining agreement with respondent covering the period from December 23, 1980 to December 23, 1983. The agreement had provisions for arbitration.[1]

---

1. Article 46, § 1 of the agreement provides in pertinent part:

   The Union and the Employer agree that there shall be no strike, lockout, tie-up, work stoppage, or legal proceedings without first using all possible means of a settlement, as provided for in this Agreement, of any controversy which might arise. Disputes shall first be taken up between the Employer and the Union involved. All grievances must be made known to the other party within five (5) days

   ... In the event that the Employer and the Union involved are unable to adjust the matter the dispute shall, within two (2) days ..., after the request of either party, be reduced to writing and referred to the Joint Local Committee and the following procedures shall then apply: (a) Where a dispute concerns a matter of discharge the Employer and the Union shall submit the matter to final and binding arbitration ...

   Article 46, § 2 of the agreement provides:

In 1981 petitioner closed its Hicksville facility and moved to Farmingdale, where petitioner's parent company is located. P & Z went out of business. Some or all of the former P & Z drivers came to work at Farmingdale. Petitioner's trucking at the Farmingdale facility was done by Bay Trucking Co., which had a pre-existing agreement with respondent to which petitioner was not a party.

On February 2, 1983 petitioner terminated its relationship with Bay. Bay then terminated its drivers.

On February 10, 1983 petitioner filed a charge with the N.L.R.B., alleging that respondent was illegally picketing petitioner with the object of forcing petitioner to cease doing business with any trucking company whose employees were not represented by respondent, in violation of 29 U.S.C. § 158(b)(4)(i)(B). On June 29, 1983 respondent filed a charge with the N.L.R.B., alleging that petitioner and Bay had illegally discharged the drivers because of their membership in respondent, and that Bay and petitioner refused to negotiate with respondent concerning the discharges.

On December 2, 1983 respondent sought arbitration of respondent's dispute with petitioner over the discharge of the drivers, contending that petitioner discharged the drivers in violation of its agreement with respondent. On December 21, 1983 petitioner commenced this action for a stay of arbitration in New York Supreme Court. On December 22, 1983 the New York Supreme Court granted petitioner a temporary restraining order staying arbitration. On January 4, 1984 respondent removed this action to this Court.

On March 30, 1984, following a hearing, Administrative Law Judge Morris of the N.L.R.B. issued a decision on petitioner's charge, in which he found that petitioner and Bay were not joint employers, that the drivers who moved from Hicksville to Farmingdale "worked off the Bay contract" with respondent and were no longer covered by the agreement between petitioner, respondent, and P & Z, and that respondent's picketing of petitioner was therefore illegal. On May 1, 1984 the N.L.R.B. adopted this decision. Also on May 1, 1984 N.L.R.B. Regional Director Kaynard summarily dismissed respondent's charge and refused to file a complaint on respondent's behalf with the N.L.R.B. Kaynard found that there was no evidence that petitioner and Bay were joint employers; that the agreement between petitioner, respondent, and P & Z was abrogated in 1981 with the acquiescence of respondent; that the drivers who moved from Hicksville to Farmingdale were covered by the contract between respondent and Bay, and that respondent therefore had no claim against petitioner for discriminatory discharge. Respondent did not appeal this decision to the N.L.R.B. General Counsel.

## II. DISCUSSION

This Court has jurisdiction over the subject matter of this action, involving the application of 29 U.S.C. § 185, pursuant to 28 U.S.C. § 1331. *See Rochdale Village, Inc. v. Public Service Emp., Etc.*, 605 F.2d 1290 (2d Cir.1979).

Respondent argues that arbitration is required under the agreement between petitioner, respondent, and P & Z. Petitioner replies that the agreement was terminated in 1981, that the agreement did not cover the drivers at the Farmingdale facility, that arbitration is in any event barred by laches, and that the N.L.R.B. actions mentioned above have res judicata or collateral estoppel effect. Respondent replies that petitioner's contentions are themselves arbitrable.

█ Generally questions of collective bargaining agreement termination are for the court rather than for the arbitrator. *Id.* at 1295. However, the Second Circuit has stated:

Questions or disputes concerning the interpretation application or enforcement of the grievance procedures provided in this Agreement shall themselves be deemed arbitrable before the Joint Local Committees subject to the appeals procedures set forth in this Article.

If a court finds that the parties have agreed to submit to arbitration disputes "of any nature or character", or simply "any and all disputes", all questions, including those regarding termination, will be properly consigned to the arbitrator: "With that finding the court will have exhausted its function, except to order the reluctant party to arbitration." *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 571, 80 S.Ct. 1363, 1364, 4 L.Ed.2d 1432, 1433 (1960) (Brennan, J., concurring).

*Rochdale, supra,* at 1295.

In the instant case, the agreement between the parties provided that they would employ the grievance procedures set forth in the agreement for "any controversy which might arise." The agreement further provided that "[q]uestions or disputes concerning the interpretation application or enforcement of the grievance procedure provided in this Agreement shall themselves be deemed arbitrable before the Joint Local Committees ..." Consequently, in the absence of the N.L.R.B. actions previously mentioned, it would be clear that we should compel petitioner to submit to arbitration, including arbitration of the issue of agreement termination, the issue of whether the agreement applied to the drivers who moved from Hicksville to Farmingdale, and the issues of laches, *see International U. of Op. Eng., Loc. 150 v. Flair Builders, Inc.,* 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972). We will turn in a moment to consider the effect of the N.L.R.B. actions.

Before proceeding to determine the effect of the N.L.R.B. actions, we must consider a question: Is the issue of res judicata itself arbitrable?

A literal reading of *Rochdale, supra,* would appear to dictate that where, as here, the parties to a collective bargaining agreement agreed to employ arbitration for "any controversy which might arise", a contention that arbitration is barred by res judicata must itself invariably be submitted to the arbitrators. For the reasons set forth below, we reject such a literal reading.

Consider first a contention that arbitration is barred by a prior state court judgment. Under 28 U.S.C. § 1738, a federal or sister state court must give a state court judgment the same preclusive effect which such judgment would be given by the courts of the state in which the judgment was entered. Arguably, federal common law under 29 U.S.C. § 185 should be viewed as requiring a state court to submit to the arbitrators a contention that arbitration under a collective bargaining agreement is barred by a prior state court judgment from the same state. If so, 28 U.S.C. § 1738 would pose no barrier to a federal or sister state court submitting to the arbitrators a contention that arbitration is barred by a prior state court judgment. However, such a view of federal common law would greatly undermine the force of 28 U.S.C. § 1738, by taking the power to give res judicata effect to prior state court judgments out of the hands of the courts and placing it in the hands of arbitrators, who might not be as respectful of such judgments as courts would be. We therefore conclude that each state is free to decide for itself (limited only by the Constitution) the situations in which its own prior state court judgments will bar arbitration under a collective bargaining agreement, and that federal and sister state courts should, pursuant to 28 U.S.C. § 1738, stay arbitration whenever they find that a prior state court judgment would bar arbitration under the policy of the state in which the judgment was entered.

Consider next a contention that arbitration is barred by a prior federal court judgment. Both Article III of the Constitution and federal common law require that federal court judgments be given some preclusive effect. A view of federal common law under 29 U.S.C. § 185 permitting a court to submit to the arbitrators a contention that arbitration is barred by a prior federal court judgment would greatly undermine this policy, and would present grave constitutional difficulties. We there-

fore conclude that a court should decide for itself and not submit to the arbitrators a contention that arbitration is barred by a prior federal court judgment.

■ Consider next a contention that arbitration is barred by a quasi-judicial administrative agency determination. As will be shown below, federal common law suggests that such determinations should at times be given preclusive effect, at least in federal court proceedings, although the need to respect such determinations is considerably less than the need to respect court judgments. While we recognize the importance of the national policy encouraging arbitration of labor disputes, we believe that a proper respect for principles of res judicata requires that a federal court decide for itself and not submit to the arbitrators the issue of the res judicata effect of such determinations, and that federal law under 29 U.S.C. § 185 should not be viewed as being to the contrary.

■ A decision by an N.L.R.B. General Counsel not to file a complaint has no res judicata effect. *Peltzman v. Central Gulf Lines, Inc.*, 497 F.2d 332, 334 (2d Cir.1974), *cert. denied*, 423 U.S. 1074, 96 S.Ct. 857, 47 L.Ed.2d 83. Consequently, the decision by N.L.R.B. Regional Director Kaynard to summarily dismiss respondent's charge against petitioner rather than to file a complaint before the N.L.R.B. on respondent's behalf (which decision respondent could have but failed to appeal to the General Counsel) has no res judicata effect in this action.

■ The decision by N.L.R.B. Administrative Law Judge Morris, adopted by the N.L.R.B., stands on a different footing. When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, res judicata and collateral estoppel may be applied. *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 421–422, 86 S.Ct. 1545, 1559–1560, 16 L.Ed.2d 642 (1966). The Second Circuit,

speaking in the context of state administrative determinations, has stated that:

> Among the factors that bear on a determination of whether a state administrative proceeding is res judicata of a subsequent judicial litigation are ... the type of hearing which is held and the procedures which are followed by the agency; and ... the intention of the administrative body and the expectations of the parties before it on the question of finality.

*Mitchell v. National Broadcasting Co.*, 553 F.2d 265, 269 (2d Cir.1977). The same factors bear on a determination of whether a federal administrative proceeding should be given res judicata or collateral estoppel effect.

■ A.L.J. Morris did not specifically state that the agreement between petitioner and respondent terminated. Although the A.L.J. stated that the drivers who moved from Hicksville to Farmingdale ceased to be covered by the agreement, it does not necessarily follow that the agreement terminated. Even if the agreement ceased to cover any workers, the agreement (including the arbitration clause) may nevertheless have remained in force. Consequently, the A.L.J.'s decision cannot be dispositive of the question of whether the agreement (including the arbitration clause) was still in force at the time respondent sought arbitration. However, the A.L.J. did find that no employer/employee relationship existed between petitioner and the drivers discharged by Bay. If this finding of the A.L.J. is given collateral estoppel effect against respondent, respondent cannot prevail on its substantive claim against petitioner (that petitioner improperly "discharged" the drivers) which respondent seeks to arbitrate.

We see no reason to believe that respondent was denied a full and fair opportunity to litigate the issue of the existence of an employer/employee relationship in the N.L.R.B. proceedings, and respondent has in any event presented none. We also see no reason why the parties and the N.L.R.B. could not foresee that a resolution of peti-

tioner's charge in petitioner's favor would bar arbitration over the discharges. We therefore find that the A.L.J.'s finding, adopted by the N.L.R.B., that petitioner was not an employer of the drivers who were discharged should be given collateral estoppel effect against respondent, that respondent's substantive claim against petitioner is therefore barred, and that the petition for a stay of arbitration should therefore be granted.

### III. CONCLUSION

Petitioner's motion for summary judgment is granted, and respondent's motion for summary judgment is denied. The arbitration sought by respondent is permanently stayed. The Clerk shall enter judgment accordingly.

SO ORDERED.