The **NORTH RIVER INSURANCE COMPANY** and United States Fire Insurance Company, Plaintiffs,

v.

**ALLSTATE INSURANCE COMPANY,** Defendant.

No. 93 Civ. 8828 (SS).

United States District Court, S.D. New York.

Oct. 7, 1994.

124

Simpson Thacher & Bartlett, New York City (Barry S. Ostrager, Andrew S. Amer, Janet A. Gochman (not yet admitted), of counsel), for plaintiffs.

Debevoise & Plimpton, New York City (Donald Francis Donovan, Mary Beth Hogan, of counsel), for defendant.

## OPINION AND ORDER

SOTOMAYOR, District Judge.

Defendant Allstate Insurance Company seeks a stay of this action pursuant to the Federal Arbitration Act, 9 U.S.C. § 3, so that arbitration may be had of a dispute arising out of a series of treaty reinsurance agreements between the parties. Plaintiffs North River Insurance Company and the United States Fire Insurance Company contend that the doctrine of collateral estoppel bars defendant from seeking further arbitration of the liability issues in the parties' dispute. For the reasons set forth below, defendant's motion to stay this action pending arbitration is granted, and the complaint will be dismissed.

### Background

The facts involved in this case are largely undisputed. North River Insurance Company ("North River"), United States Fire Insurance Company ("US Fire"), and their affiliates the International Insurance Company ("IIC") and Westchester Fire Insurance Company ("Westchester Fire") (collectively the "plaintiffs"), provided insurance coverage to manufacturers who produced goods containing asbestos. To reduce their exposure, plaintiffs entered into a series of

reinsurance treaties with defendant Allstate Insurance Company ("Allstate")[1].

The reinsurance treaties at issue covered intermittent periods dating back to 1968. The treaties provided that for each "occurrence," Allstate would provide coverage above a certain retention, or deductible. The various treaties had retentions ranging from $250,000 to $1,000,000. The treaties all contain substantially similar arbitration clauses, which provide in pertinent part:

> If any dispute shall arise between the reinsured and the reinsurer with reference to the interpretation of this contract or their rights with respect to any transaction involved, the dispute shall be referred to three arbitrators ... [t]he arbitrators shall consider this contract an honorable engagement rather than merely a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law. The decision of a majority of the arbitrators shall be final and binding on both the reinsured and the reinsurer.

Affidavit of Andrew S. Amer, Sworn to March 7, 1994 at Ex. A, Article XV ("Amer Aff.").

In the wake of extensive asbestos litigations in the 1980's, plaintiffs submitted claims to Allstate. A dispute arose, however, over the meaning of the word "occurrence" in the treaties. Allstate contended that because each asbestos claim arose out of multiple occurrences, plaintiffs and their affiliates had to pay multiple retentions. Plaintiffs argued that all of the asbestos claims arose out of a single occurrence, and therefore only a single retention payment was required. To resolve this dispute, in 1989–90 plaintiffs initiated a number of arbitration proceedings.

By consent of all parties, the arbitrations were consolidated (hereinafter the "Consolidated Arbitration"). The Consolidated Arbitration was held before a panel of three arbitrators in October 1992. On November 11, 1992, a majority of the arbitrators found in favor of plaintiffs. *See* Amer Aff. at Ex. B. The two page arbitration award does not indicate the grounds upon which the majority based its decision, nor did the dissenting member of the panel provide any reasons for his disagreement. The award was confirmed by an order of the Supreme Court of New York, New York County, on December 1, 1993.

Currently, there are seven pending arbitrations between Allstate and North River, and one between Allstate and US Fire. Although no demand has been made, another dispute (hereinafter the "MacArthur Claim") will be submitted to arbitration if a stay pending arbitration is granted in this action[2].

Defendant herein seeks an order pursuant to the Federal Arbitration Act[3] staying this action so that arbitration may proceed in accordance with the arbitration clause contained in each treaty. Plaintiffs maintain

---

**1.** Under a reinsurance contract, a reinsurer agrees to indemnify the reinsured against all or part of the loss that may be incurred under insurance policies issued by the reinsured. Brief of Amicus Curiae Reinsurance Corporation of New York at 5 (citation omitted). In a facultative reinsurance agreement, the reinsurer assumes a share of the reinsured's liability on a specific policy. Treaty reinsurance, the type of reinsurance at issue in this case, obligates the reinsurer to accept certain types of risks for all policies that fall within a particular line of business underwritten by the reinsured, whether or not specifically disclosed to the reinsurer. *Id.* at 6 (citations omitted). Generally, treaty reinsurance contracts are entered into by parties expecting a long term relationship, and for this reason treaty provisions, including arbitration clauses, are drafted broadly to cover unforeseen contingencies. Brief of Amicus Curiae, Reinsurance Association of America at 17–18 (citations omitted).

**2.** By stipulation dated February 2, 1994 Allstate agreed not to take any action concerning the pending arbitrations or to initiate the MacArthur Claim until resolution of this action.

**3.** 9 U.S.C. § 3 provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

that the doctrine of collateral estoppel bars Allstate from seeking further arbitration of the liability issue between the parties because the central issue in each of the pending disputes is the meaning of the term "occurrence."[4] Plaintiffs contend that once the award in the Consolidated Arbitration was confirmed by the Supreme Court of New York, the Full Faith and Credit Act[5] requires this Court to permanently enjoin Allstate from proceeding with the pending arbitrations on the liability issues between the parties. Defendant, in turn, asserts that the merits of plaintiffs' collateral estoppel defense should be determined by the arbitrators, and not by the Court.

### Discussion

Federal policy, as embodied by the Federal Arbitration Act ("FAA"), "strongly favors arbitration as an alternative dispute resolution process." *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 248 (2d Cir.), *cert. dismissed*, 501 U.S. 1267, 112 S.Ct. 17, 115 L.Ed.2d 1094 (1991) (citing *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 478–82, 109 S.Ct. 1917, 1919–20, 104 L.Ed.2d 526 (1989); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir.1987)). The FAA is a codification of "a liberal federal policy favoring arbitration agreements," *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), and was designed to "allow parties to avoid the costliness and delays of litigation ...." *Genesco* at 844. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985) (citing 9 U.S.C. §§ 3–4) (emphasis in original).

As a threshold matter, a court must determine "whether the parties agreed to arbitrate, and if so, whether the scope of that agreement encompasses the asserted claims." *Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 45 (2d Cir.1993) (citing *Threlkeld* at 249). In deciding whether a dispute is arbitrable, a court "is not to rule on the potential merits of the underlying claims." *Transit–Mix Concrete Corp. v. Local Union No. 282*, 809 F.2d 963, 967 (2d Cir.1987) (quotation omitted). Any doubts concerning the scope of arbitrable issues "should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language or an allegation of waiver, delay, or a like defense to arbitrability." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 121 (2d Cir.1991) (quoting *Moses H. Cone* 460 U.S. at 24–25, 103 S.Ct. at 941–42). *See also Associated Brick Mason Contractors of Greater New York, Inc. v. Harrington*, 820 F.2d 31, 35 (2d Cir.1987) (presumption of arbitrability is so strong that arbitration will be ordered even if claim appears frivolous) (citing *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649–50, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986)); *Government of the United Kingdom v. Boeing Co.*, 998 F.2d 68, 72 (2d Cir.1993) (arbitration agreements enforced even if such enforcement creates inefficiencies or "piecemeal litigation").

Inquiries into the scope of an arbitration clauses are governed by "the federal substantive law of arbitrability." *Progressive Casualty* at 48 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985) (quoting *Moses H. Cone* 460 U.S. at 24–25, 103 S.Ct. at 941–42)). In construing the scope of arbitration clauses, courts distinguish between "broad" and "narrow" arbitration clauses. *McDonnell Douglas Finance Corp. v. Pennsylvania Power &*

---

**4.** At oral argument, plaintiffs admitted that arbitration might still be needed to determine the amounts, above the retention, that Allstate owed under each treaty.

**5.** 28 U.S.C. § 1738 provides in pertinent part:

The records and judicial proceedings of any court of any such State, Territory, or Possession ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

*Light Co.,* 858 F.2d 825, 832 (2d Cir.1988) (citing cases). If the clause is narrow, the court's inquiry is limited to a determination of whether the issue is on its face within the purview of the clause. *Id.* (citing *AT & T Technologies* 475 U.S. at 650, 106 S.Ct. at 1419). If a court concludes that an arbitration clause is broad, then "it will order arbitration and any subsequent construction of the contract and of the parties' rights and obligations under it are within the jurisdiction of the arbitrator." *Id.* (citing cases). The strong presumption in favor of arbitrability "applies with greater force when an arbitration clause is a broad one." *Id.* (citing *AT & T Technologies* at 650, 106 S.Ct. at 1419). *See also Concourse Village, Inc. v. Local 32E, Service Employees Int'l Union,* 822 F.2d 302, 304 (2d Cir.1987) ("unless it can be said 'with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute,' the dispute should be submitted to arbitration.") (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)); 9 U.S.C. § 3 (where issue referable to arbitration under an agreement, court shall stay proceedings).

Neither party disputes the existence or validity of the arbitration clauses in the reinsurance treaties. To determine the scope of the arbitration clause, I turn to the text of the treaty. As noted the clause provides, "[i]f *any* dispute shall arise between the reinsured and the reinsurer with reference to the interpretation of this contract or their rights with respect to any transaction involved, the dispute shall be referred to three arbitrators ..." Amer Aff. at Ex. A, Article XV (emphasis added). The use of the term "any" makes it clear that the parties intended the clause to be broad. *See Wagoner* at 121 (arbitration clause that purports to refer "all disputes" to arbitration is broad, and should be afforded strong presumption of arbitrability) (citations omitted); *Rochdale Village, Inc. v. Public Service Employees Union, Local No. 80,* 605 F.2d 1290, 1295 (2d Cir.1979) (same). Moreover, neither party disputes that the question of what "occurrence" means under the treaties is an issue covered by the broad arbitration clause. In fact, an identical issue,

under other treaties, was resolved in the Consolidated Arbitration.

The doctrine of collateral estoppel, or issue preclusion:

> bars a party from relitigating in a second proceeding an issue of fact or law that was litigated and actually decided in a prior proceeding, if that party had a full and fair opportunity in the prior proceeding and the decision of the issue was necessary to support a valid and final judgment on the merits.

*Metromedia Co. v. Fugazy,* 983 F.2d 350, 365 (2d Cir.1992) (citing cases). Under res judicata, or claim preclusion, a "final judgment on the merits bars further claims by parties or their privies from relitigating issues that were or could have been raised in that action." *Benjamin v. Traffic Executive Association Eastern Railroads,* 869 F.2d 107, 111 (2d Cir.1989) (quoting *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 466–67 n. 6, 102 S.Ct. 1883, 1889 n. 6, 72 L.Ed.2d 262 (1982)). The crucial distinction between these two preclusion doctrines is that res judicata prohibits litigation of matters between parties that they may never have argued or were not decided. *Id.* at 111–12 (citing C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure,* § 4416 at 136 (1981)). Because of this difference, "invoking collateral estoppel in a given case may be permissible when invoking res judicata is not." *Id.* at 112.

Guided by these principles, I turn to the question of whether this Court or an arbitration panel should determine the preclusive effect of the Consolidated Arbitration in the current dispute between the parties. Under the Full Faith and Credit Act, a federal court "must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered," *Khandhar v. Elfenbein,* 943 F.2d 244, 247 (2d Cir.1991) (quoting *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984)). Thus, were this Court to decide the preclusive effect of the Consolidated Arbitration, the Full Faith and Credit Act might require that I employ state

law rules of preclusion. *See Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985) (federal courts prohibited from employing their own rules of res judicata to determine effect of state court judgment).

■ However, state law does not determine what forum—a court or arbitrators—hears the merits of a dispute between parties and decides whether to give preclusive effect to a prior arbitration between parties. Both a court and arbitrators are capable of addressing and applying doctrines of preclusion.[6] Instead, the issue before this Court is not governed by the Full Faith and Credit Act because the issue before the court is what is arbitrable and arbitrability is determined by rules of federal law, not state law. *See Moses H. Cone* 460 U.S. at 24, 103 S.Ct. at 941; *Progressive* at 48.[7]

■ Under federal law, there is no bright line rule when courts should allow arbitrators to determine the collateral estoppel effect of a previous arbitration award. *Gonce v. Veterans Administration,* 872 F.2d 995, 997 (Fed Cir.), *cert. denied,* 493 U.S. 890, 110 S.Ct. 234, 107 L.Ed.2d 186 (1989) ("[f]rom what the Supreme Court has said, it appears that the preclusive effect of prior arbitration awards is for individual resolution, absent a provision in the governing contract that requires earlier awards to bind subsequent arbitrators.") (citations omitted). The Second Circuit has held that arbitration proceedings "can, but do not necessarily, have preclusive

effect on subsequent federal court proceedings." *Leddy v. Standard Drywall, Inc.,* 875 F.2d 383, 385 (2d Cir.1989) (citing *Dean Witter Reynolds* 470 U.S. at 223, 105 S.Ct. at 1243–44; *Benjamin* at 107). *See also Connecticut Light & Power Co. v. Local 420,* 718 F.2d 14, 19–20 (2d Cir.1983) (principles of stare decisis and res judicata do not have the same doctrinal force in arbitration proceedings as they do in judicial proceedings);

Courts often show "deference" to the decisions of arbitrators because of their "superior experience and competence ... and his or her selection by the parties." *Connecticut Light & Power* at 19–20 (quotation omitted). However, this deference is vis-a-vis a court, not a second arbitrator. *Id.* An arbitrator faced with a case with issues resolved in a prior arbitration has discretion as to whether to follow a previous award. While "it is the usual practice of arbitrators to find prior awards final and binding ... subsequent arbitrators may set aside or modify a previous award in certain circumstances." *Id.* (citations omitted). These circumstances include cases where "(1) the previous decision was clearly an instance of bad judgment; (2) the decision was made without the benefit of some important and relevant facts or considerations; or (3) new conditions have arisen questioning the reasonableness of the continued application of the decision." *Id.* (citation omitted). Where two arbitrators render inconsistent decisions, neither award will be set aside where they both draw their essence from the underlying contract. *Id.* at 19–20 (citations omitted)[8].

---

6. Plaintiffs urge me to adopt the reasoning of *Trafalgar Shipping Co. v. Int'l Milling Co.,* 401 F.2d.568 (2d Cir.1968) (Lumbard, C.J. dissenting) and *Hudson–Berlind Corp. v. Local 807, Affiliated with Int'l Brotherhood of Teamsters,* 597 F.Supp. 1282, 1285–86 (E.D.N.Y.1984). In *Trafalgar Shipping,* then Chief Judge Lumbard wrote,

> [I]t is not likely that arbitrators can be altogether objective in deciding whether or not they ought to hear the merits. Once they have bitten into the enticing fruit of controversy, they are not apt to stay the satisfying of their appetite after one bite.

*Id.* at 573–74. Whatever force this logic may have had in 1968, more recent case law from the Supreme Court and the Second Circuit takes a less hostile view of the capabilities of arbitrators. *See, e.g., Moses H. Cone, supra.* For similar reasons, I reject the rationale set forth in *Hud-*

son–Berlind at 1285 (force of Full Faith and Credit Act undermined by giving arbitrators power to determine preclusive effect of prior state court judgment because arbitrators "might not be as respectful of such judgments as courts would be.").

7. I also note that had this case had been brought before a state court, the result would be the same. The state court would *still* have to determine the. preliminary question of arbitrability under federal law.

8. Thus, I reject any suggestion by plaintiffs that this Court should deny defendant's motion to compel arbitration on the basis that such an action would expose plaintiffs to possible inconsistent arbitral awards.

Given the particular facts of this case, I find no reason for this Court to deviate from these principles and not let the arbitrators decide the preclusive effect of a prior award merely because it was confirmed in a state court. Although the treaties involved in the current dispute are almost identical in context to the treaties considered in the Consolidated Arbitration, most of the treaties in dispute now involve different coverage periods. *See Gonce* at 999 (inappropriate to accord collateral estoppel effect to prior arbitration when "there is not precise correspondence of facts, circumstances, and timing ...").

In their broad arbitration clauses incorporated in each treaty, the parties agreed to let the arbitrators "consider this contract an honorable engagement rather than merely a legal obligation" and the clauses absolved the arbitrators "from following the strict rules of law." Amer Aff. at Article XV. Thus, the arbitration agreements themselves are broad enough to encompass the power of the arbitrators to adopt or reject "the strict rules of law," i.e. the preclusive effect of a prior award. This question of whether to apply collateral estoppel to the defenses of a party in arbitration is no different from an adjudication by the arbitrators of any other matter in dispute between the parties. *See Mitsubishi*, 473 U.S. at 628, 105 S.Ct. at 3354 ("[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."). *See also Boeing* at 72 (FAA requires courts to "enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.") (quoting *Volt Info. Sciences v. Bd. of Trustees*, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989)).

I, like other Courts of this District, find the logic of allowing arbitrators to decide procedural defenses to arbitration equally compelling in the context of res judicata and collateral estoppel. *See Philadelphia Electric Company v. Nuclear Electric Ins. Ltd.*, 845 F.Supp. 1026, 1028 (S.D.N.Y.1994) (Sprizzo, J.) (under New York law, whether prior arbitration award constitutes bar to relief sought is within exclusive province of arbitrator to resolve [9]); *Blue Bell, Inc. v. Western Glove Works, Ltd.*, 1993 WL 404006 (S.D.N.Y.1993) (Sweet, J.) (rejecting assertion that arbitrator will fail to give proper res judicata and collateral estoppel effect to prior award); *Enterprise Assoc. Metal Trades Branch Local Union 638 v. Empire Mechanical, Inc.*, 1992 WL 84689 (S.D.N.Y.1992) (Haight, J.) (affirmative defenses, including res judicata, that affect merits of arbitrable claim are decided by arbitrators rather than courts); *South Ionian Shipping Co., Ltd. v. Hugo Neu & Sons Int'l Sales Corp.*, 545 F.Supp. 323 (S.D.N.Y.1982) (Duffy, J.) (under agreement controlled by broad arbitration clause, res judicata effect of judgment rendered by foreign court should be determined by arbitration) (Duffy, J.). *But see Helmsley Spear, Inc. v. Local 32B–32J Service Employees Int'l Union*, 1991 WL 150530 (S.D.N.Y.1991) (Martin, J.) (Under New York law, whether second arbitration is precluded by res judicata or collateral estoppel is question for court to decide).

Speaking in the context of procedural defenses, the Second Circuit observed:

> When one party to a dispute seeks to stay the other party's demand for arbitration by raising various defenses to arbitration before a district court, there is a considerable temptation for the court to pass on the validity of such defenses rather than to refer their resolution to an arbitrator. Determining the merits of such defenses may often appear to be a simple task that

---

9. Under New York law, it is unclear whether an arbitrator or a court should determine the preclusive effect of a prior arbitration award. The Court in *Philadelphia Electric* primarily relied upon the New York Court of Appeals' decision in *Bd. of Ed. of Patchoque–Medford Union Free School District v. Patchoque–Medford Congress of Teachers*, 48 N.Y.2d 812, 424 N.Y.S.2d 122, 399 N.E.2d 1143 (1979). A contrary result was reached by a divided panel of the Court of Appeals in *Rembrandt Indus., Inc. v. Hodges Int'l,*

*Inc.*, 38 N.Y.2d 502, 504, 381 N.Y.S.2d 451, 344 N.E.2d 383 (1976) ("the scope of the [arbitration] award and, therefore, its Res judicata effect, is an issue properly determinable by the court, and not the arbitrators."). Although *Rembrandt* has not been overruled, I note its possible conflict with the Supreme Court's decision in *Mitsubishi Motors*, 473 U.S. at 626, 105 S.Ct. at 3353–54 (scope of arbitration clause determined under federal law).

should not be delayed or deferred, and judges are, by training and temperament, prepared to decide the issue that come before them.

These reactions, while understandable, are at odds with the policy considerations embodied in the Federal Arbitration Act, which favor the enforcement of arbitration agreements.

*Conticommodity Services, Inc. v. Philipp & Lion,* 613 F.2d 1222, 1224 (2d Cir.1980); *See also Wagoner* at 121 (referring statute of limitations defense to arbitration). Adopting similar reasoning, the Federal Circuit has cautioned:

[c]ourts should be careful not to 'judicialize' the arbitration process. Arbitration normally envisions that each case be decided on its own under the controlling contract without undue reliance on other arbitration awards, even if the facts and circumstances are close. Arbitrators are expected to bring their best judgment to bear, not to ritualistically follow what others have done, especially ... when they suspect an error was earlier committed.

*Gonce* at 998–99.

Allowing arbitrators to determine the preclusive effect of the Consolidated Arbitration is also consistent with the reasoning set forth in *Transit–Mix Concrete,* 809 F.2d 963, 965 (2d Cir.1987). In *Transit–Mix Concrete,* an employer sought a permanent stay of arbitration on the ground that a prior arbitration (the "Lippman award") resolved the issue in the present case. The employer's argument hinged on a finality clause in a collective bargaining agreement providing that "[a]ll determinations, decisions and awards shall be final, conclusive, and binding upon the parties ...[.]" *Id.* In affirming the denial of the stay, the Second Circuit held:

Since the finality clause does not exclude from arbitration any class of disputes ... it follows that questions as to the applicability of the finality clause—in the sense of whether the Lippman award adjudicated the issues raised in the present dispute—

or as to its effect—in the sense of the res judicata effect of the Lippman award—are assigned, at least in the first instance, to the [Board of Arbitration] Panel ... Under these circumstances, we find it neither necessary nor appropriate for us to decide the extent, if any, to which the Lippman award resolved the issues raised in the present dispute.

*Id.* at 969–70.

Finally, I find the series of cases relied upon by plaintiffs where courts have decided the preclusive effect of a prior arbitration award to be unpersuasive. Most of these cases rely on reasoning similar to or directly set forth in *Sprague & Rhodes Commodity Corp. v. Instituto Mexicano Del Cafe,* 566 F.2d 861 (2d Cir.1977) (per curiam). In *Sprague & Rhodes,* plaintiff sought an order to compel arbitration pursuant to § 4 of the FAA. Defendant, meanwhile, filed suit against plaintiff in Mexico. The district court denied the motion to compel arbitration, and an appeal was taken. Before the appeal was argued, the Mexican court rendered judgment for defendant. Defendant argued that arbitration was barred under the doctrine of res judicata. The Second Circuit stated that a prior adjudication on the merits might "affect any decision to compel arbitration." On remand, the Second Circuit instructed the district court to determine (1) whether the Mexican court had jurisdiction, and (2) if so, "the res judicata effect, if any, that the foreign judgment has in this case." *Id.* at 863 n.*.

It is true that subsequent cases have interpreted the *Sprague & Rhodes* instructions to mean that a court can and should determine the preclusive effect of a prior arbitration. *See, e.g., Ank Shipping Co. v. Seychelles National Commodity Co.,* 596 F.Supp. 1455 (S.D.N.Y.1984)); *Proodos Marine Carriers Co. v. Overseas Shipping & Logistics,* 578 F.Supp. 207 (S.D.N.Y.1984). I think a more faithful interpretation of *Sprague & Rhodes* is that the Second Circuit was instructing the district court to consider whether a judgment rendered by a foreign *court,* rather than by an arbitration panel, was res judicata.[10]

10. It is unknown what action the district court took on remand because there is no reported

subsequent decision.

Even assuming plaintiffs' correctly interpret *Sprague & Rhodes*, plaintiffs confuse an important distinction by assuming that holdings involving res judicata apply with equal force to cases involving collateral estoppel.[11] As noted, while both res judicata and collateral estoppel are preclusion doctrines, they are not interchangeable. *See Benjamin* at 111 (explaining difference between collateral estoppel and res judicata).

In 1989–90, plaintiffs' were aware and accepted the fact that disputes under each treaty had to be arbitrated separately. Each plaintiff commenced separate arbitration proceedings against the defendant, even though each dispute centered around the meaning of "occurrence" in identically worded treaties. Pl. Memorandum of Law in Opposition at 5. Without the stipulated consent to consolidate the hearings, each treaty may have been arbitrated by separate panels, each making its own findings and conclusions. Plaintiffs, therefore, cannot now claim that ordering remaining disputes to separate arbitrations is inconsistent with the provisions of the relevant treaties.

■ Given the extensive number of arbitrations at issue and the divergent cases on the question of whether courts or arbitrators decide issues of preclusion, questions concerning the appealability of this order were raised at oral argument. Appeals from orders concerning arbitration are governed by § 16 of the FAA. Under § 16, the timing of an appeal hinges on whether the action was "independent" or "embedded." *Filanto, S.P.A. v. Chilewich Int'l Corp*, 984 F.2d 58, 59 (2d Cir.1993). An embedded proceeding is one where the court retains jurisdiction over the parties while they arbitrate a discrete portion of their dispute. *Chung v. President Enterprises Corp.*, 943 F.2d 225, 227 (2d Cir.1991). Because the underlying action in such cases is still pending after the arbitration order has been issued, that order is considered interlocutory and thus not appealable until the court subsequently confirms or rejects the arbitration decision[12]. *Id.* An independent proceeding is one where upon resolution of the arbitration issue, the court no longer retains jurisdiction over the parties. *Id.* Because the court's order in such cases ends the litigation, it is a final decision and may be appealed immediately. *Id.* (quotation omitted).

■ In the case at bar, plaintiffs initiated this action seeking, *inter alia*, an order permanently staying the pending arbitrations and entering judgment with respect to losses incurred in excess of $2.8 million in retentions. Complaint at Jury Demand ¶¶ 1–4. By ordering a stay of this action, I have effectively denied plaintiffs the judicial relief sought in their Complaint. As no pending issues remain before the Court, and all issues between the parties concerning liability and damages will be decided in arbitration, the entire action before the Court will be dismissed and plaintiffs may immediately appeal this order[13].

**11.** In addition to *Sprague & Rhodes*, the following cases cited by plaintiff involved res judicata rather than collateral estoppel: *Miller Brewing Co. v. Fort Worth Distributing Co.*, 781 F.2d 494, 499 (5th Cir.1986) (Under Texas law, res judicata bars subsequent arbitration); *Hatzlachh Supply, Inc. v. Moishe's Electronics, Inc.*, 848 F.Supp. 25, 28 (S.D.N.Y.1994) (Duffy, J.) (same interpretation of Texas law); *Helmsley Spear*, 1991 WL 150530 at *1 (once arbitrator renders final award, res judicata precludes any further hearings); *Burmah Oil Tankers, Ltd. v. Trisun Tankers, Ltd.*, 687 F.Supp. 897, 899 (S.D.N.Y.1988) (MacMahon, J.) (previous arbitration award was res judicata where subsequent claim was part of cause of action resolved by arbitration panel).

**12.** An order in an embedded proceeding could be appealed immediately if the district court certified the question for interlocutory appeal pursuant 28 U.S.C. § 1292(b). *See Filanto* at 59 n. 2.

**13.** I note to the Second Circuit that if this case were an embedded suit, I would certify the question whether I or the arbitrators should decide the collateral estoppel effect of the prior arbitral award. The requirements for certification, set forth in 28 U.S.C. § 1292(b), are: (1) that the order involve a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) that an immediate appeal from that order will materially advance the ultimate termination of the litigation. *McNeil v. Aquilos*, 820 F.Supp. 77 (S.D.N.Y.1993) (citing *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir.1990)). All three of these requirements have been met in this case. The vast number of pending asbestos litigations throughout the Second Circuit, the multiple arbitrations affected by this case, and the divergence of opin-

## Conclusion

For the reasons stated above, the Clerk of the Court is directed to enter judgment granting defendants' motion to stay this action, and dismissing the Complaint.

**SO ORDERED.**

ion taken by courts presented with issues similar to the one in the case at bar, satisfy the first two prongs for certification. *See id.* (a controlling issue of law is one that substantially affects a large number of cases). Given the number of pending and potential arbitrations (eight), to al-

low the issue before this Court to remain unreviewed risks exposing the parties to very substantial expense and delay in arbitrating a potentially precluded issue. Thus the third prong for certification is also present here.