**Yvonne L. HAFER, et al., Plaintiffs,**

v.

**VANDERBILT MORTGAGE AND FINANCE, INC., et al., Defendants.**

**Civil Action No. C–11–128.**

United States District Court, S.D. Texas, Corpus Christi Division.

June 24, 2011.

---

49. Plaintiff's Objections to Defendants' Request for Bill of Costs, Docket Entry No. 292, p. 9.

50. *Id.* at 7.

David L. Rumley, Wigington Rumley Dunn, LLP, Corpus Christi, TX, Baldemar Gutierrez, J. Javier Gutierrez, The Gutierrez Law Firm, Inc., Alice, TX, Richard E. Norman, R. Martin Weber, Jr., Crowley Norman LLP, Houston, TX. Michael B. Angelovich, Nix Patterson & Roach, LLP, Austin, TX, for Plaintiffs.

Patton G. Lochridge, Carlos R. Soltero, April E. Lucas, McGinnis, Lochridge & Kilgore, LLP, Austin, TX, Lee E. Bains, Jr., Thomas W. Thagard, III, Edward S. Sledge, IV, Maynard, Cooper & Gale, P.C., Birmingham, AL, W. Scott Simpson, Simpson, McMahan, Glick & Burford, PLLC, Birmingham, AL, for Defendants.

## ORDER

JANIS GRAHAM JACK, District Judge.

Pending before the Court are Defendants' Motion to Compel Arbitration of Plaintiff Yvonne Hafer's Individual Claims and Vanderbilt's Counterclaims Against Plaintiff Yvonne Hafer (D.E. 11) and Defendants' Motion to Compel Arbitration of Plaintiffs Timothy Jones, Katherine Jones, and Christy Jones' Individual Claims (D.E. 12).

For the reasons stated herein, the motions to compel arbitration are GRANTED. The individual claims asserted by Plaintiff Yvonne Hafer, as well as the counter-claims asserted by Vanderbilt against Hafer, are to be decided by binding arbitration. 9 U.S.C. § 4. The individual claims asserted by Plaintiffs Timothy Jones, Katherine Jones and Christy Jones are also to be decided by binding arbitration. 9 U.S.C. § 4. As agreed, the Clayton parties shall bear the cost of arbitration, and the venue for arbitration shall be Corpus Christi, Texas. (D.E. 37 at 10, n. 14.)

In addition, because the Court is satisfied that this lawsuit is referable to arbitration under the parties' agreement, the Court ORDERS that this action be

STAYED pending the arbitration proceedings. 9 U.S.C. § 3.

## I. Jurisdiction

This is a putative class action filed under Rule 23 of the Federal Rules of Civil Procedure. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), providing that the district courts shall have original jurisdiction of any class action filed under Rule 23 in which the matter in controversy exceeds the sum or value of $500,000, exclusive of interests and costs, and in which any member of the putative class of plaintiffs is a citizen of a state different from any defendant. § 1332(d)(2)(A).

## II. Background

On April 18, 2011, Plaintiffs Yvonne L. Hafer, Timothy Jones, Katherine Jones, and Christy Jones filed a putative class action against Defendants Vanderbilt Mortgage & Finance, Inc., Clayton Homes, Inc., and CMH Homes, Inc. for fraud and other violations of Texas law. (D.E. 1.)

The Plaintiffs allege that Defendants engaged in the "routine pattern and practice" of: creating mortgage liens and deeds of trust to secure repayment of debts incurred by Plaintiffs in order to purchase mobile homes from Defendants, "secretly releasing" the mortgage liens and deeds of trust with releases stating that the debts were "paid in full," and then continuing to bill for, and accept payments on debts that had allegedly been released. (*Id.* at 1.)

According to the complaint, each of the Plaintiffs purchased a manufactured home from Defendants CMH Homes and Clayton Homes, Inc., for which Vanderbilt provided the financing. Each signed a Retail Installment Contract ("RIC") obligating them to make monthly payments to Vanderbilt until the maturity date. The purchases were secured by liens placed on real property, memorialized in two documents, a Builder's & Mechanic's Lien ("BML") and a Deed of Trust ("DOT"), which were prepared and filed in the real property records as part of the transaction. (*Id.* at 2.)

In October 2005, Vanderbilt, in conjunction with CMH and Clayton Homes, Inc. secretly filed hundreds (possibly over a thousand) releases of these liens across Texas. Plaintiffs allege that the BML and DOT releases released the liens on real property *and* the underlying debt on the RIC finance contracts as "paid in full." (*Id.* at 3.) Nonetheless, even after intentionally filing the releases, Defendants continued to bill Plaintiffs and accept payments on their manufactured homes. (*Id.* at 7.)

Plaintiff Hafer allegedly had her home repossessed after she could no longer pay bills sent to her. Plaintiffs Timothy Jones and Katherine Jones paid over $14,000 since the releases were filed because they were afraid of losing their home. (*Id.*)

Based on these events, Plaintiffs assert the following claims against Vanderbilt, CMH Homes and Clayton Homes, Inc. (hereafter referred to collectively as "Defendants" or "the Clayton parties"): (1) Declaratory judgment, (2) Texas Debt Collection Practices Act, (3) Money Had and Received, (4) Fraud, and (5) Civil Conspiracy.

The Clayton parties have answered, denying these allegations. Vanderbilt brings a counter-claim against Plaintiff Hafer for breach of contract and unjust enrichment, alleging that Hafer failed to perform her obligations under the RIC to make payments on her mobile home. (D.E. 8 at 20–23.)

The Clayton parties have now filed motions to compel arbitration of the named parties' claims and Vanderbilt's counter-claims against Hafer. (D.E. 11, D.E. 12.)

The Plaintiffs have responded. (D.E. 26.) Defendants have filed a reply. (D.E. 39.)

## III. Discussion

### A. Motion to Compel Arbitration

■ The Federal Arbitration Act ("FAA") permits an aggrieved party to file a motion to compel arbitration when an opposing "party has failed, neglected, or refused to comply with an arbitration agreement." *American Bankers Ins. Co. of Florida v. Inman*, 436 F.3d 490, 493 (5th Cir.2006) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)); *see also* 9 U.S.C. § 4.

FAA Section 4 provides that, when a party petitions the court to compel arbitration under a written arbitration agreement, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4.

■ The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. Thus, ... agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).

■ When considering a motion to compel arbitration under the FAA, a court employs a two-step analysis. "First, a court must determine whether the parties agreed to arbitrate the dispute in question. Second, a court must determine whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir.2006) (internal citations and quotation marks omitted).

■ "The first step of the analysis—whether the parties agreed to arbitrate the dispute in question—consists of two separate determinations: '(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.'" *Id.*

### B. Analysis

#### 1. Valid Agreement to Arbitrate Dispute in Question

The first step in the analysis requires the Court to determine whether there is a valid agreement to arbitrate between the parties. *See id.* Defendants argue that this dispute is subject to the arbitration agreement in the Retail Installment Contract ("RIC"). They submit documentary evidence showing that each of the named Plaintiffs executed a RIC with Defendant CMH Homes containing the same arbitration agreement. The arbitration agreement, located at the bottom of the third page of the RIC, provides, in part:

> **ARBITRATION:** All disputes, claims or controversies arising from or relating to this contract, or the subject hereof, or the parties, including the enforceability or applicability of this arbitration agreement or provision and any acts, omissions, representations and discussions leading up to this agreement, hereto, including this agreement to arbitrate, shall be resolved by mandatory binding arbitration by one arbitrator selected by Seller with Buyer's consent. This agreement is made pursuant to a transaction in interstate commerce and shall be governed by the Federal Arbitration

Act at 9 U.S.C. Section 1 ... The parties agree and understand that all disputes arising under case law, statutory law and all other laws including, but not limited to, all contract, tort and property disputes will be subject to binding arbitration in accord with this contract.

(D.E. 11, Ex. 1, ¶ 9, Ex. 1–A, p. 3; Ex. 2–A, p. 3; D.E. 12, Ex. 1, ¶ 9, Ex. 1–A, p. 3; Ex. 2–A, p. 3.) The agreement states that "[t]he parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein." (*Id.*) The agreement further states in bold and capital letters: "**THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL.**" (*Id.*)

■ Under the FAA, "a written arbitration agreement is prima facie valid and must be enforced unless the opposing party ... alleges and proves ... such grounds as exist at law or in equity for the revocation of the contract." *Freudensprung v. Offshore Technical Servs., Inc.,* 379 F.3d 327, 341 (5th Cir.2004) (internal citations and quotations omitted); 9 U.S.C. § 2. Defendants have made the *prima facie* showing necessary to compel arbitration of Plaintiffs' claims.

Plaintiffs provide several reasons for finding that there is no valid agreement to arbitrate the dispute in question and for declining to submit the dispute to arbitration. Having considered each objection in turn, the Court finds that none of them has merit. The Court addresses each of Plaintiffs' arguments in detail below.

### a. Must the Court First Decide Whether Plaintiffs' Debts Were Released?

Plaintiffs first argue that, because the lien releases filed in October 2005 allegedly discharged them from all obligations under the RIC, there is currently no valid agreement between the parties to arbitrate. (D.E. 26.) They contend that the question of the release was already litigated in *Vanderbilt Mortgage and Finance, Inc. v. Cesar Flores, et al.,* Civil Action No. 2:09–cv–312, where the jury found that similarly situated parties' debts had been released. Therefore, Plaintiffs claim, the question of release—whether by trial or by application of collateral estoppel, claim preclusion or res judicata—must be decided before arbitration can be compelled pursuant to the RIC's arbitration clause. (D.E. 26 at 10).

■ The Court finds that it need not, and indeed cannot, decide the issue of release prior to compelling arbitration, assuming all other requirements for arbitration are met. The general rule, long recognized by the Supreme Court, is that under the FAA, federal courts may only consider "issues relating to the making and performance of the agreement to arbitrate." *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). "[O]nly if the arbitration clause is attacked on an independent basis can the court decide the dispute; otherwise, general attacks on the agreement are for the arbitrator." *Will–Drill Res., Inc. v. Samson Res. Co.,* 352 F.3d 211, 218 (5th Cir.2003).

■ There is an exception to this rule. "[W]here the 'very existence of a contract' containing the relevant arbitration agreement is called into question, the federal courts have authority and responsibility to decide the matter." *Banc One Acceptance Corp. v. Hill,* 367 F.3d 426, 429 (5th Cir. 2004) (quoting *Will–Drill,* 352 F.3d at 218, where Supreme Court recognized this exception to the *Prima Paint* rule.) This is because, if it is ultimately found no valid agreement existed, then "no agreement to

arbitrate was ever concluded. The arbitrator consequently would have no authority to decide anything." *Id.*

Plaintiffs cite to several cases applying this exception, arguing that the Court should also do so in the present case. In *General Guaranty Ins. Co. v. New Orleans General Agency, Inc.*, one of the parties moved to stay the suit pending arbitration. 427 F.2d 924, 926 (5th Cir.1970). The other party responded by asserting that the contract containing the arbitration provision was abandoned by mutual consent and superseded by another contract with different terms and provisions which did not contain an arbitration clause. *Id.* The district court denied the request to stay proceedings pending arbitration, stating:

> The question is then presented—should the parties be directed to arbitrate? We think not. **There is a possibility that the contract has been abandoned.** If this were the case, it would be because of some subsequent agreement over which it is agreed the arbitrator has no jurisdiction. **That issue must be determined by the Court, and to avoid a useless arbitration, should be, we believe, determined now.**

*Id.* at 927 (emphases added).

The Fifth Circuit upheld this portion of the district court's ruling, stating, that "[t]he propriety and desirability of having an initial judicial determination of whether an arbitration contract exists is well recognized," and "[i]f the first agreement was superseded by the second, arbitration would drop out of the picture." *Id.* at 928–29; *see also In re Bath Junkie Franchise, Inc.*, 246 S.W.3d 356, 364 (Tex.App.-Beaumont, 2008) ("When determining whether a later agreement between the parties revokes an arbitration clause, the determination lies with the court because '[w]ithout an agreement to arbitrate, arbitration cannot be compelled.' ") (quoting *Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576, 586 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (citing *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex.1994) (orig. proceeding) (per curiam)); *TransCore Holdings, Inc. v. Rayner*, 104 S.W.3d 317, 321–23 (Tex.App.-Dallas 2003, pet. denied).)

However, in this case, unlike in *Will-Drill* or in the cases cited by Plaintiffs, Plaintiffs do not challenge the "very existence" of the RIC. 352 F.3d at 218. Unlike in *General Guaranty Ins. Co.*, Plaintiffs do not argue that the RIC was abandoned and/or superseded by a subsequent agreement. 427 F.2d at 926. Rather, they argue merely that their *debt* under the RIC was discharged. Plaintiffs do not dispute the *existence* of the RIC. Indeed, in their declaratory judgment cause of action, Plaintiffs seek "a declaration that the **amounts due on the finance contract (RIC) between Plaintiffs and Defendants** have been released in their entirety or otherwise 'paid in full' as indicated by Defendants in their releases filed in the real property records of the respective Texas counties." (D.E. 1 at 13) (emphasis added). Likewise, in their TDCA cause of action, Plaintiffs contend that "Defendants misrepresented the character, extent and amount of the alleged debt owed by Plaintiffs **under their respective RICs.**" (*Id.*) (emphasis added). Moreover, in the prior case tried before this Court, the Court awarded the Counter-Plaintiffs title to their mobile home based on the sale of the home under an identical RIC. *Vanderbilt Mortgage and Finance, Inc. v. Cesar Flores, et al.*, Civil Action No. 2:09-cv-312, D.E. 284. This would not have been an appropriate remedy if the very existence of the RIC were in doubt.

■ "Where a defense does not specifically relate to the arbitration agreement ... it must be submitted to the arbitrator as part of the underlying dispute." *Banc*

*One*, 367 F.3d at 429 (citing *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 472 (5th Cir.2002); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002)). Because Plaintiffs do not question the underlying existence of the RICs they signed, the Plaintiffs' claim that their debts under the RICs was released is appropriate for submission to the arbitrator as part of the underlying dispute. *Id.*; *see also Will–Drill*, 352 F.3d at 218

**b. Must the Court, Rather than the Arbitrator, Determine the Preclusive Effect of the Prior Judgment in *Vanderbilt, et al. v. Flores and King, et al.?***

In a similar vein, the Plaintiffs argue that court, not arbitration, is the proper forum for deciding whether the issue of release, previously litigated in *Vanderbilt Mortgage and Finance, Inc. v. Cesar Flores, et al.*, Civil Action No. 2:09–cv–312, will have preclusive effect on Defendants under the doctrines of collateral estoppel and/or res judicata. They cite two Fifth Circuit decisions in support of this proposition.

In *Miller Brewing Co. v. Ft. Worth Distributing Co.*, a distributor filed a state court action to enjoin a brewing company from terminating a distributorship agreement. 781 F.2d 494 (5th Cir.1986). After the state court dismissed the action with prejudice for want of prosecution, the plaintiff invoked the arbitration clause in the contract in order to pursue essentially the same claim. *Id.* at 495–496. The district court allowed the case to proceed to arbitration, and the brewing company appealed. *Id.* at 496.

On appeal, the Fifth Circuit court found that the distributor had waived its right to compel arbitration by "substantially invoking the judicial process" to the prejudice of the brewing company, given that it waited

three and a half years and lost in court before it invoked the arbitration clause. *Id.* at 497. Additionally, the court found that, even if there were no waiver, the distributor would be barred from arbitrating the claims under the doctrine of res judicata because it had previously brought the same claim for damages in state court. The court stated:

> Even if the waiver considerations outlined above did not apply, we would still have good grounds for enjoining arbitration proceedings in this case. The doctrine of res judicata, as developed by Texas courts, ensures that when a court of competent jurisdiction has entered a final judgment on the merits of a case, the parties are bound as to all claims that were raised or that could have been raised ... The Arbitration Act contemplates that awards made pursuant to arbitration will be confirmed in the federal courts. 9 U.S.C. § 9. **Since an arbitration award involves the entry of judgment by a court, parties should be barred from seeking relief from arbitration panels when, under the doctrine of res judicata, they would be barred from seeking relief in the courts.** *See Ank Shipping Co. v. Seychelles National Commodity Co.*, 596 F.Supp. 1455, 1458–59 (S.D.N.Y.1984); *N.Y.S. Association for Retarded Children v. Carey*, 456 F.Supp. 85, 96 (E.D.N.Y.1978).

*Id.* at 498–499 (emphasis added); *see also Local 1351 Int'l Longshoremens Ass'n v. Sea–Land Serv., Inc.*, 214 F.3d 566, 572 (5th Cir.2000) ("While tripartite arbitration is generally favored in these types of labor disputes, the major procedural obstacle to ordering it in the present case is that the Southern District of New York had already entered a final judgment affirming the arbitrator's decision in the grievance filed by OPEIU against Sea–Land. None of the cases in which courts ordered tripar-

tite arbitration have involved an earlier arbitration award which has already been confirmed by a district court's final judgment.")

Plaintiffs are correct that, under these precedents, parties who have previously litigated their claims against the same parties should not then be allowed to compel arbitration of those same claims. *Miller*, 781 F.2d at 498–499; *Local 1351*, 214 F.3d at 572. However, in neither of these cases did the Fifth Circuit hold that the *court*, rather than the arbitrator, should decide the preclusive effect of the prior claims. More importantly, both of these cases involved final judgments issued between the *same parties* on the *same claims*: that is, they involved the doctrine of res judicata, not the doctrines of issue preclusion or collateral estoppel.[1]

■■■■ Under Texas law, "res judicata bars relitigation of **claims** that were brought or could have been brought in an earlier case involving **the same parties** (or their privies) and the same subject matter.' " *Webb v. Persyn*, 866 S.W.2d 106, 107 (Tex.App.San Antonio 1993) (quoting *Soto v. Phillips*, 836 S.W.2d 266, 268 (Tex. App.-San Antonio 1992, writ denied)) (emphasis added). The doctrine of collateral estoppel or issue preclusion is different. *See Julien v. City of Sherman*, 1997 WL 714870, *2 (Tex.App.Dallas, 1997) ("the issues before us involve the doctrine of collateral estoppel, not res judicata"). "Offensive use of collateral estoppel is when the plaintiff seeks to stop a defendant from relitigating an issue that the defendant has previously litigated." *Id.* (citing *Fletcher v. National Bank of Commerce*, 825 S.W.2d 176, 177 (Tex.App.-Amarillo 1992, no writ).) This is precisely what Plaintiffs

attempt to do here in using the jury's prior judgment against Defendants, in a case to which Plaintiff were not parties, in order to stop Defendants from relitigating the issue.

A district court in the Ninth Circuit also noted this difference between res judicata and collateral estoppel in the context of deciding a motion to compel arbitration. *See Collins v. D.R. Horton, Inc.*, 252 F.Supp.2d 936, 941 (D.Ariz.2003). The court analyzed the issue as follows:

> Plaintiffs claim that because numerous other courts adopt the view that the res judicata effects of a prior court ruling should be decided by a judge, rather than an arbitrator, the Court must hold that the collateral estoppel effects of Judge Bolton's ruling should be decided by this Court. According to Plaintiffs, public policy mandates that courts rule on both claim and issue preclusion of prior court judgments because courts possess inherent power to defend their own judgments. Otherwise, the finality and integrity of judgments might be compromised because parties may, via use of arbitrators, be able to ignore previous federal court decisions that conclusively settled the same claims or issues. Furthermore, Plaintiffs argue that public policy prohibits parties from contracting around court judgments, because these judgments are not creatures of contract. Concomitantly, in contrast, arbitrators should only decide the claim and issue preclusion of prior arbitration awards, even when those awards are confined by courts, because these judgments are creatures of contract.
>
> . . .

---

**1.** Although the court in *Local 1351* referred generally to the doctrines of collateral estoppel and issue preclusion, the court held only that OPEIU was prevented from re-litigating its claims against Sea–Land. 214 F.3d at

572. It did not address whether the same result would be reached if issue preclusion were being used as an offensive tactic by a non-party, as is the case here.

Plaintiffs cite to other courts' cases asserting that they hold that the collateral estoppel preclusive effect of curtailments is a matter solely for future courts to act upon. *John Hancock Mut. Life Ins. Co. v. Olick,* 151 F.3d 132, 139 (3d Cir.1998); *Miller v. Runyon,* 77 F.3d 189, 193 (7th Cir.1996); *In re Y & A Group Sec. Litigation,* 38 F.3d 380, 383 (8th Cir. 1994); *Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 985 F.2d 1067, 1069 (11th Cir.1993); *Miller Brewing Co. v. Fort Worth Distrib. Co.* 781 F.2d 494, 498–99 (5th Cir.1986). **However, careful review of these cases establishes that, while at times the courts refer to preclusion generally, the courts' holdings apply to the res judicata effects of prior court Judgments, not collateral estoppel effects.**

*Id.* (emphasis added).

Adopting the reasoning of the court in *Collins,* this Court finds that the Fifth Circuit's decisions in *Miller* and *Local 1351* do not mandate that the Court, rather than the arbitrator, must decide the preclusive effect of the judgment in *Vanderbilt v. Flores, et al.,* as it is being used offensively against the Defendants by a non-party. *See Collins,* 252 F.Supp.2d at 941. Moreover, the Second Circuit has held that the issue preclusive effect of a prior judgment is itself an arbitrable issue that may be presented to the arbitrator, rather than the court. *See U.S. Fire Ins. Co. v. National Gypsum Co.,* 101 F.3d 813, 816–817 (2d Cir.1996).

In *National Gypsum Co.,* the Second Circuit overturned a district court's decision to address the preclusive effect of its prior decision finding that insurers had no obligation to pay certain defense costs in asbestos litigation, the Second Circuit stated:

[I]n order to reach its conclusion that the issues concerning costs of defense were identical, the district court found it

necessary to interpret the [the Agreement out of which the lawsuit arose] ... [Thus, a]t least one facet of the dispute thus requires interpretation of [the Agreement], plainly a question for the arbitrator rather than for the district court to decide.

Nor is issue preclusion so obscure a question that doubt is cast upon whether the parties intended that it be subject to arbitration. In *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), the Supreme Court noted that courts should apply a presumption that parties did not agree to arbitrate arbitrability unless there is clear and unmistakable evidence to the contrary. 115 S.Ct. at 1924. But once a court finds that there is an agreement to arbitrate some issues, the presumption switches: ambiguity as to whether an issue is within the scope of an arbitration agreement is resolved in favor of arbitrability. *Id. First Options* involved the issue of whether a court or the arbitrator should decide arbitrability. The Court found the issue of the arbitrability of arbitrability to be so arcane that it inferred that parties who do not express a preference are unlikely to have considered the issue. Not having considered the issue, the parties would, in the Court's view, likely have assumed that the arbitrator would not resolve that issue because of the principle that parties will be subject to arbitration only on issues they have agreed to arbitrate. *Id.* at 1924–25. In the instant matter, **the question of who should decide the issue-preclusive effect of a prior judgment is not so arcane because, unlike the arbitrability of arbitrability, it is not a higher-order question. Further, given a valid arbitration agreement with sweeping language and the courts' well-known tendency to find issues arbitrable, the**

insurers can hardly claim that their reasonable expectations are defeated. *Id.* at 816–817 (emphasis added); *see also North River Insurance Company v. Allstate Insurance Company,* 866 F.Supp. 123, 129 (S.D.N.Y.1994) (the "question of whether to apply collateral estoppel ... is no different from an adjudication by the arbitrators of any other matter in dispute between the parties.")

Another district court in the Fifth Circuit reached the same conclusion as the Second Circuit in a similar case. *See Eureka Homestead Soc'y v. Howard, Weil, Labouisse, Friedrichs Inc.,* 1996 WL 748442, at *2, 1996 U.S. Dist. LEXIS 19474, *7 (E.D.La. Dec. 30, 1996). In *Eureka,* a defendant in an action involving both federal securities law and state law claims filed a motion to enjoin arbitration of the state law claims because the issues implicated in the state law claims were "identical to those resolved [by the district court in its prior judgment.]" *Id.* The court declined to preclude the claims from proceeding to arbitration, holding:

> In the absence of any evidence of bad faith or vexatious litigation the court declines to [enjoin the arbitration proceeding], **because such a ruling would require the court to take the inappropriate step of visiting the merits of the state law claims to determine if all of the prerequisites for collateral estoppel are present in this case.** The arbiters are in a far better position to make such a determination, and the court does not find that anything in this case justifies a deviation from the usual rule that when a plaintiff seeks to relitigate a prior claim (or in this case, arbitrate), the forum in the second action is ordinarily charged with the application of any preclusive effect of the prior judgment.

*Id.* at *2, 1996 U.S. Dist. LEXIS 19474 at *7–8 (citing *Gypsum,* 1996 U.S.App. LEX-

IS 29159, 1996 WL 705409 (2d Cir.(N.Y.)) (Nov. 4, 1996)) (emphasis added).

 Choosing to adopt the positions taken by the Second Circuit in *Gypsum* and the district court in *Eureka,* the Court finds that the preclusive effect of the judgment in *Vanderbilt v. Flores, et al.* is an issue for the arbitrator, not for the court. As in *Gypsum,* the preclusive effect of the prior judgment falls within the general scope of the arbitration clause, which applies to "[a]ll disputes, claims or controversies arising from or relating to [the RIC], or the subject [of the RIC], or the parties, including the enforceability or applicability of this arbitration agreement or provision and any acts, omissions, representations and discussions leading up to this agreement, hereto, including this agreement to arbitrate[.]" (D.E. 11, Ex. 1, ¶ 9, Ex. 1–A, p. 3; Ex. 2–A, p. 3; D.E. 12, Ex. 1, ¶ 9, Ex. 1–A, p. 3; Ex. 2–A, p. 3.)

As in *Gypsum,* in order to decide the preclusive effect of the judgment in *Flores* upon the present case, the Court would have to decide whether the issues involved in that case and the present case are "identical," which would require interpreting and comparing the language of the RIC's signed by the plaintiffs in both actions, as well as the language of the lien documents and the releases. This is "plainly a question for the arbitrator rather than for the district court to decide." *Gypsum,* 101 F.3d at 817. "[S]uch a ruling would require the court to take the inappropriate step of visiting the merits of the ... claims to determine if all of the prerequisites for collateral estoppel are present in this case." *Eureka,* 1996 WL 748442 at *2, 1996 U.S. Dist. LEXIS 19474 at *7–8.

### c. Did Defendants Waive the Right to Arbitrate?

Plaintiffs also argue that the doctrine of waiver precludes the Clayton parties from

compelling arbitration. In short—without citing any cases—Plaintiffs argue that Defendants waived the right to arbitrate by litigating and obtaining a judgment in *Vanderbilt v. Flores, et al.* (D.E. 26 at 14.) They also point to an Agreed Order Consolidating Discovery and Agreed Protective Order, issued in the *Flores* case, stating that "all disputes in any matter, whether federal or state, relating to this Protective Order, the production of documents pursuant to this Protective Order, or the scope of the production of documents shall be brought before this Court for resolution." (*Id.* at 15.)

 "Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Miller,* 781 F.2d at 497. Waiver occurs when the party seeking arbitration " 'engage[s] in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.' " *Keytrade USA v. Ain Temouchent M/V,* 404 F.3d 891, 897 (5th Cir. 2005) (quoting *Republic Ins. Co. v. PAICO Receivables, LLC,* 383 F.3d 341, 344 (5th Cir.2004)). "Waiver of arbitration is not a favored finding and there is a presumption against it." *Lawrence v. Comprehensive Business Services Co.,* 833 F.2d 1159, 1164 (5th Cir.1987).

In *Nicholas v. KBR,* the Fifth Circuit held that "the act of a plaintiff filing suit without asserting an arbitration clause constitutes substantial invocation of the judicial process, unless an exception applies."[2] 565 F.3d 904, 908 (5th Cir.2009). "Indeed, short of directly saying so in open court, it is difficult to see how a party could more clearly 'evince[ ] a desire to resolve [a] . . . dispute through litigation

rather than arbitration,' than by filing a lawsuit going to the merits of an otherwise arbitrable dispute." *Id.* (internal quotations omitted.)

 However, the Fifth Circuit has made clear that "a party only invokes the judicial process to the extent it litigates a specific claim it subsequently seeks to arbitrate." *Subway Equip. Leasing Corp. v. Forte,* 169 F.3d 324, 328 (5th Cir.1999). In this case, the claims litigated by the Defendants in *Vanderbilt v. Flores, et al.* and elsewhere are distinct from the claims to be litigated here because the plaintiffs are different, as are the contracts (the individual RIC's signed by each CMH Homes customer) giving rise to the plaintiffs' claims. *Compare C.C.N. Managed Care, Inc. v. Fayez Shamieh A.M.C.,* 374 Fed. Appx. 506, 509 (5th Cir.2010) (finding waiver of right to arbitrate due to prior state court litigation when "[b]oth actions involved the same contracts between CCN and the Providers, and both involved the question of whether the discounts taken under those contracts were in violation of the AWPA and the WCL.")

As to Plaintiffs argument that the statement in the Agreed Order Consolidating Discovery and Agreed Protective Order issued in *Vanderbilt v. Flores, et al.* constitutes waiver, the Court does not find execution of that order to be an "overt act" that "evince[d] a desire to resolve" the *present dispute* through litigation rather than through arbitration. *See Keytrade,* 404 F.3d at 897.

 In this action, the Defendants have taken every step to retain their right to arbitrate. Their only actions other than filing their motions to compel arbitration were to file a Certificate of Interested

---

2. The court noted that "exceptions" include but are not limited to situations where a plaintiff files suit "solely to obtain a threshold declaration as to whether a valid arbitration

agreement existed." *Id.* (citing *Republic Ins. Co. v. Paico Receivables LLC,* 383 F.3d 341, 345 (5th Cir.2004)).

Parties, which is required pursuant to the Court's Order for Conference and Disclosure of Interested Parties, (D.E. 2), and to file their answers to the complaint. (D.E. 8, D.E. 9, D.E. 10.) In Vanderbilt's answer, which included counterclaims against Plaintiff Hafer, Vanderbilt explicitly stated that its counterclaims were "subject to and without waiver of its right to compel [Plaintiffs] to arbitrate their claims against Vanderbilt as well as Vanderbilt's counterclaims against Yvonne L. Hafer[.]" (D.E. 8 at 20.)[3] Defendants filed their Motions to Compel Arbitration on May 17, 2011, less than a month after being served with the complaint. (D.E. 11, D.E. 12.) These actions are not sufficient to constitute a waiver of the right to arbitrate. *See, e.g.,* *Cargill Ferrous Int'l v. SEA PHOENIX MV,* 325 F.3d 695, 700–01 (5th Cir.2003) (holding that arbitration was not waived even though the parties had conducted full discovery and had a bench trial on the merits after the district court refused to compel arbitration, when the party seeking arbitration asserted that right in its initial answer and filed a motion to compel arbitration six months later when only a minimal amount of discovery had occurred).

Therefore, the Court finds that the Defendants have not waived their right to compel arbitration of the Plaintiffs' claims. *Keytrade,* 404 F.3d at 897.

### d. Is the Arbitration Agreement Unconscionable?

Plaintiffs finally argue that the arbitration agreement is unconscionable and therefore unenforceable.

■■■ The FAA declares written provisions for arbitration "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *See* 9 U.S.C. § 2; *Doctor's Assocs. v. Casarotto,* 517 U.S. 681, 687–88, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). When determining whether the parties agreed to an arbitration provision subject to the FAA, the court applies state-law principles governing the formation of contracts. *First Options v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

■■■ Under Texas law, "[u]nconscionability principles are applied to prevent unfair surprise or oppression." *In re Palm Harbor Homes, Inc.,* 195 S.W.3d 672, 679 (Tex.2006). "Unconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself." *In re Halliburton Co.,* 80 S.W.3d 566, 571 (Tex.2002). "[S]ince the law favors arbitration, the burden of proving a defense to arbitration is on the party opposing arbitration." *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 756 (Tex.2001).

The Clayton parties contend that the arbitration clause must be *both* substantively and procedurally unconscionable to be unenforceable. (D.E. 39 at 10) (citing *Arkwright–Boston Mfrs. Mut. Ins. Co. v. Westinghouse Elec. Corp.,* 844 F.2d 1174, 1184 (5th Cir.1988).) However, it is not clear Texas law requires this dual showing. "Although the Texas Supreme Court has never specifically held that both types of unconscionability are required, at least one

---

**3.** The Court also notes, without opining on the legal effect of this language, that the RIC's arbitration agreement states that "[t]he institution and maintenance of a lawsuit to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement **shall not constitute a waiver of the** **right of any party to compel arbitration** regarding any other dispute or remedy subject to arbitration in this contract, including the filing of a counterclaim in a suit brought by Seller pursuant to this provision." (D.E. 11, Ex. 1 at 4; D.E. 12, Ex. 1 at 4) (emphases added).

state appellate court has suggested that the party seeking to avoid arbitration must generally make such a dual showing." *Johnson v. AT & T Mobility, L.L.C.,* 2010 WL 5342825, *4, 2010 U.S. Dist. LEXIS 134850, *10–11 (S.D.Tex. Dec. 21, 2010) (citing *Wade v. Austin,* 524 S.W.2d 79, 86 (Tex.Civ.App.-Texarkana 1975, no writ).) "The Fifth Circuit has interpreted the language in *Wade* as requiring a plaintiff to prove both types of unconscionability." *Id.* (citing *Arkwright–Boston,* 844 F.2d 1174, 1184 (5th Cir.1988); *Boston Mfrs. Mut. Ins. Co. v. Westinghouse Elec. Corp.,* 844 F.2d 1174, 1184 (5th Cir.1988).) "[However,] the Texas Supreme Court recently refused to enforce an arbitration provision solely on the grounds of substantive unconscionability." *Id.* (citing *In re Poly–America, L.P.,* 262 S.W.3d 337, 350–353 (Tex.2008).)

Regardless, this Court need not attempt to resolve the apparent ambiguity in Texas state contract law, as the Court finds that Plaintiffs have not demonstrated the existence of either procedural or substantive unconscionability. They give the following grounds for holding that the arbitration agreement is unconscionable: (1) it is an adhesion contract, (2) entered into by sophisticated business entities and relatively inexperienced consumers, (3) that one-sidedly allows Vanderbilt to select whether to litigate in court or to arbitrate, (4) but requires the customer to always submit claims to arbitration, (5) before an arbitrator initially selected by Vanderbilt. (D.E.

26 at 18.) The Court considers each of these bases in the context of procedural and substantive unconscionability.

**(1) Procedural Unconscionability**

Procedural unconscionability refers to the circumstances surrounding the adoption of the arbitration provision. *In re Halliburton Co.,* 80 S.W.3d at 571. The party contesting the contractual arbitration provision has the burden to show procedural unconscionability. *Smith v. H.E. Butt Grocery Co.,* 18 S.W.3d 910, 912 (Tex.App. Beaumont 2000, pet. denied) (citing *In re Oakwood Mobile Homes,* 987 S.W.2d 571, 573 (Tex.1999)).

"Adhesion contracts are not automatically void. Instead, the party seeking to avoid the contract generally must show it is unconscionable." *Dillard v. Merrill Lynch, Pierce, Fenner & Smith,* 961 F.2d 1148, 1154 (5th Cir.1992). In similar cases, the Fifth Circuit has repeatedly rejected the argument that the imbalance of power between the parties alone makes an adhesion contract unconscionable.

In *Fleetwood Enterprises, Inc. v. Gaskamp,* the plaintiffs were consumers who negotiated with a sales representative for Manufactured Bargains the purchase a mobile home manufactured by defendant Fleetwood. 280 F.3d 1069, 1071 (5th Cir. 2002) (applying Texas law). To obtain financing for their home, the plaintiffs signed documentation that included an Arbitration Provision. *Id.*[4] After Plaintiffs brought suit against Fleetwood in Missis-

---

**4.** The Arbitration Provision provided, in relevant part:

> The parties to the Retail Installment Contract or Cash Sale Contract agree that any and all controversies or claims arising out of, or in any way relating to, the Retail Installment Contract or Cash Sale Contract or the negotiation, purchase, financing, installation, ownership, occupancy, habitation, manufacture, warranties (express or implied), repair or sale/disposition of the home which is the subject of the Retail

> Installment Contract or Cash Sale Contract, whether those claims arise from or concern contract, warranty, statutory, property or common law, will be settled solely by means of final and binding arbitration before a three-judge panel of the American Arbitration Association (AAA) in accordance with the rules and procedures of the AAA....

> The parties agree that this Arbitration Provision inures to the benefit of, and is intended to be for the benefit of, the manufacturer

sippi state court bringing a variety of personal injury claims, Fleetwood filed a motion to compel arbitration in the United States District Court for the Southern District of Texas, which ordered all of plaintiffs' claims to arbitration and stayed proceedings. *Id.*

On appeal, the Fifth Circuit upheld the district court's order compelling arbitration, rejecting the plaintiffs' defense of unconscionability. *Id.* at 1077.[5] The plaintiffs argued that, when they signed the contract for financing of their home, they were improperly told the arbitration agreement was "standard documentation" they were required to sign to keep living in their home, that there was no explanation of the documentation, and that they did not have any opportunity to read or negotiate the agreement's terms. *Id.* Also, they pointed out that they were "unsophisticated with respect to business and legal matters, whereas [the Fleetwood defendants were] very experienced in contract negotiations." *Id.*

The Fifth Circuit held, however, that plaintiffs had failed to meet their burden to show the arbitration agreement was unconscionable because "[t]he only evidence the [plaintiffs] presented is in the form of their allegations of misrepresentations and pressure to sign the documents quickly. Such allegations are insufficient to establish unconscionability. **And while there may be imbalance in the relative**

**sophistication of the parties, this imbalance is insufficient on its own to render the agreement unconscionable."** *Id.* (emphasis added). The court further emphasized the difficulty of proving procedural unconscionability under Texas law, stating:

> The only cases under Texas law in which an agreement was found procedurally unconscionable involve situations in which one of the parties appears to have been incapable of understanding the agreement. *See In re Turner Bros. Trucking Co.,* 8 S.W.3d 370 (Tex.App.Texarkana 1999) (finding an agreement was procedurally unconscionable where one of the parties was functionally illiterate, nobody explained the agreement to him, and the person who gave him the agreement to sign did not understand the agreement); *Prevot v. Phillips Petroleum Co.,* 133 F.Supp.2d 937 (S.D.Tex.2001) (finding procedural unconscionability where the plaintiffs did not speak English and the agreement was not translated or explained to them).

*Id.*

Texas courts have reached the same conclusion in very similar cases. In *In re Green Tree Servicing, LLC,* plaintiff, while purchasing a Clayton Manufactured Home, entered into a RIC and a security agreement, serviced by Green Tree Servicing, LLC ("Green Tree"). 275 S.W.3d 592, 597 (Tex.App.-Texarkana, 2008). Plaintiff de-

---

of the home which is the subject of the Retail Installment Contract or Cash Sale Contract as fully as if the manufacturer was a signatory to the Retail Installment Contract or Cash Sale Contract.

The parties agree that this Arbitration Provision inures to the benefit of, and is intended to be for the benefit of, any lender or mortgagee (or assigns) who provides financing for the purchase of the home ... THE PARTIES KNOWINGLY AND VOLUNTARILY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL.

*Id.* at 1071, n. 2.

**5.** The court held, however, that the *children* of the customers who signed the contract were not bound by the arbitration clause because they "are not signatories to the sales contract, are not third-party beneficiaries of the agreement or contract, and are not suing on the basis of the contract, they are not bound by the arbitration agreement signed by their parents." *Id.* at 1077.

faulted on his payments, and Green Tree brought suit in the County Court of Law of Harrison County. *Id.* Plaintiff counterclaimed, alleging breach of contract, violations of the Federal Debt Collection Practices Act, and violations of the Texas Fair Debt Collection Practices Act. *Id.* Green Tree moved to compel arbitration. *Id.* The trial court found, however, that the contract's arbitration agreement was procedurally unconscionable on the ground that it was located on the last page and plaintiff did not sign or initial the last page. *Id.* at 603.

On appeal, the appellate court overturned the trial court's judgment, stating: "the failure to read a contract does not ordinarily void a contract absent fraud or misrepresentations." *Id.* (citing, e.g., *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005); *Fleetwood*, 280 F.3d at 1077 ("The only cases under Texas law in which an agreement was found procedurally unconscionable involve situations in which one of the parties appears to have been incapable of understanding the agreement.")). "Absent a duty to disclose, an agreement is not unconscionable merely because one party was not informed of the arbitration clause." *Id.* (citing *Emerald Tex., Inc. v. Peel*, 920 S.W.2d 398, 402 (Tex.App.-Houston [1st Dist.] 1996, no writ).) Given that there was "no evidence Green Tree misrepresented the existence of the arbitration clause or otherwise engaged in deception," the appellate court found the arbitration agreement to be enforceable. *Id.*

██ In this case, the Plaintiffs signed the Defendants' arbitration agreement in the same context of purchasing a mobile home as was considered by Fifth Circuit in *Fleetwood* and by the Texas appellate court in *Green Tree*. Like the mobile home

customers in those cases, Plaintiffs had a duty to read the contract they signed, even if they did not actually sign or initial the page on which the arbitration agreement was located. *Id.* There is no evidence that any of the Plaintiffs was incapable of understanding the terms of the RIC's that they signed. While there may have been an imbalance in the relative sophistication of the parties to the RIC, "this imbalance is insufficient on its own to render the agreement unconscionable." *Fleetwood*, 280 F.3d at 1077; *see also Palm Harbor Homes, Inc.*, 195 S.W.3d at 679 ("[t]he principles of unconscionability do not negate a bargain because one party to the agreement may have been in a less advantageous bargaining position.")

According to these principles, the arbitration agreements contained in the RIC's executed by the Plaintiffs were not procedurally unconscionable. *Fleetwood*, 280 F.3d at 1077; *Green Tree*, 275 S.W.3d at 603.

### (2) Substantive Unconscionability

██ "The test for substantive unconscionability is whether, 'given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract.'" *Palm Harbor Homes, Inc.*, 195 S.W.3d at 678 (quoting *FirstMerit Bank*, 52 S.W.3d at 757).

Plaintiffs give two bases for a finding of substantive unconscionability: (1) that the arbitration agreement permits Vanderbilt, at its option, to seek relief from the courts, while it compels Plaintiffs to arbitrate, and (2) that it gives Vanderbilt the right to select the arbitrator with Plaintiffs' consent. The Court addresses each provision in turn.[6]

---

6. Other grounds for substantive unconscionability, arbitral cost and venue, have already

been foreclosed. At the June 7th initial pretrial conference, the Defendants agreed to pay

### i) Vanderbilt's Option to Litigate

Plaintiffs first argue that the RIC's arbitration clause is unconscionable because it allows Vanderbilt to select whether to litigate in court or to arbitrate, but requires the Plaintiffs to always submit claims to arbitration before an arbitrator selected by Vanderbilt with Plaintiffs' consent. (D.E. 26 at 17.) As explained above, the agreement provides that the "parties agree and understand that they choose arbitration instead of litigation to resolve disputes"; however, it further provides:

> Notwithstanding anything hereunto the contrary, **Seller retains an option to use judicial (filing a lawsuit) or non-judicial relief to enforce a security agreement relating to the Manufactured Home secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation secured by the Manufactured Home or to foreclose on the manufactured home.** The institution and maintenance of a lawsuit to foreclose upon any collateral, to obtain a money judgment or to enforce the security agreement shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this contract, including the filing of a counterclaim in a suit brought by Seller pursuant to this provision.

(D.E. 26, Ex. 1, Ex. 2 at 3) (emphasis added). Thus, while customers must submit claims to arbitration, Vanderbilt may choose instead to bring claims against customers in the courts.

To support their argument that this one-sided provision renders the agreement un-conscionable, Plaintiffs point to two cases in which the Fifth Circuit addressed similar arbitration clauses and found them unenforceable, applying Louisiana law and Mississippi law, respectively.

In *Iberia Credit Bureau, Inc. v. Cingular Wireless, LLC*, customers of three cellular-telephone service providers alleged that the service providers had engaged in deceptive trade practices and breached their customers' service agreements. 379 F.3d 159, 162 (5th Cir.2004) (applying Louisiana state law.) The district court denied the defendants' motion to compel arbitration. *Id.* Although the Fifth Circuit reversed the decision with respect to two of the companies, it upheld the court's conclusion with respect to one of the service providers, Centennial. *Id.* The Court found Centennial's agreement "possesses a significant feature that the others lack. Namely, among its other challenged features, the agreement appears to require only the customer to arbitrate all disputes, leaving the company with the choice of pursuing a lawsuit instead of arbitrating. Louisiana cases suggest that this is a particularly troubling provision." *Id.* at 168.[7]

Finding that recent Louisiana appellate cases had deemed such arrangement unconscionable and unenforceable, the court held that this provision rendered Centennial's agreement unconscionable and that the district court had not erred in denying the motion to compel arbitration. *Id.* at 171; *see also Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 432–433 (5th Cir. 2004) (applying Mississippi law) (upholding district court's ruling that arbitration

---

all arbitrator fees and have agreed that the arbitration would proceed in Corpus Christi for the convenience of Plaintiffs. (D.E. 37 at 10, n. 14.)

**7.** The agreement stated, in relevant part: "You agree that instead of suing in court, you will arbitrate any and all disputes and claims arising out of this Agreement or the Service." *Id.* Yet, elsewhere, the clause referred to "both you and we." Thus, the court concluded, the plain meaning of the sentence is that it binds only the customer to arbitrating rather than litigating all claims arising out of the agreement. *Id.*

clause exempting claims brought by seller of automobile in the event of a default by customer was unconscionable under Mississippi law, but not addressing the propriety of this specific provision).

■ In this case, as in *Iberia* and *Banc One*, the RIC's arbitration clause does one-sidedly allow Vanderbilt to use litigation rather than arbitration in order to enforce a security agreement relating to the manufactured home, to enforce the monetary obligation secured by the manufactured home, or to foreclose on the manufactured home. (D.E. 26, Ex. 1, Ex. 2 at 3.) However, the holdings cited by Plaintiffs, do not mandate a finding of unconscionability. In both cases, the Fifth Circuit made clear that its holding of unconscionability was based on the applicable holdings of the state courts applying the state laws of Louisiana and Mississippi, respectively. *See Iberia*, 379 F.3d at 166 ("as a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts."); *Banc One*, 367 F.3d at 431 ("the validity of an arbitration provision is a question of state law.")

As explained, the arbitration clause in this case is subject to the unconscionability principles established by Texas law, not Louisiana law or Mississippi law. In *FirstMerit Bank*, the Texas Supreme Court addressed precisely the same argument for unconscionability, holding as follows:

The de los Santoses also argue that the agreement's terms are unconscionable because they force the weaker party to arbitrate their claims, while permitting the stronger party to litigate their claims. They point us to decisions in other jurisdictions that have found this type of clause to be unconscionable. [*See*, e.g., *Armendariz v. Foundation Health Psychcare Servs.*, 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669, 691–94

(Cal.2000); *Iwen v. U.S. West Direct*, 293 Mont. 512, 977 P.2d 989, 995–96 (1999).] Most federal courts, however, have rejected similar challenges on the grounds that an arbitration clause does not require mutuality of obligation, so long as the underlying contract is supported by adequate consideration. [*See*, e.g., *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 183 (3d Cir.1999); *Doctor's Assoc., Inc. v. Distajo*, 66 F.3d 438, 451–53 (2d Cir.1995); *Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp.*, 878 F.2d 167, 168–69 (6th Cir.1989); *Young v. Jim Walter Homes, Inc.*, 110 F.Supp.2d 1344, 1350 (M.D.Ala.2000); *Pridgen v. Green Tree Fin. Servicing Corp.*, 88 F.Supp.2d 655, 658–59 (S.D.Miss.2000); *Gray v. Conseco, Inc.*, 2000 WL 1480273, 2000 U.S. Dist. LEXIS 14821, 13–16 (C.D.Cal. Sept. 29, 2000).] In any event, the basic test for unconscionability is whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract. The principle is one of preventing oppression and unfair surprise and not of disturbing allocation of risks because of superior bargaining power. Here, the Arbitration Addendum allows the bank to seek judicial relief to enforce its security agreement, recover the buyers' monetary loan obligation, and foreclose. Given the weight of federal precedent and the routine nature of mobile home financing agreements, [*see Palm Harbor Homes, Inc. v. McCoy*, 944 S.W.2d 716, 723 n. 8 (Tex.App.-Fort Worth 1997, orig. proceeding),] **we find that the Arbitration Addendum in this case, by excepting claims essentially protecting the bank's security interest, is not unconscionable.** [*See Pridgen*, 88

F.Supp.2d at 658–59; *see also Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335 (Ky.App.2001).] We also recognize that the plaintiffs are free to pursue their unconscionability defense in the arbitral forum.

52 S.W.3d 749, 757–758 (5th Cir.2001) (emphasis added).

Plaintiffs argue that the Court should distinguish the result in *FirstMerit* as mere dicta, since, at the time, substantive (as opposed to procedural) unconscionability was not a question for the courts. (D.E. 26 at 18) (citing *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573, n. 3 (Tex.1999) ("whether the terms and conditions of an arbitration agreement are themselves unconscionable is a matter which must be submitted to the designated arbitrator.")) Therefore, Plaintiffs state, the Court in *FirstMerit* made its decision on the presumption that the plaintiffs were "free to pursue their unconscionability defense in the arbitral forum." *FirstMerit*, 52 S.W.3d at 758. Here, Plaintiffs would not be able to do so. Moreover, Plaintiffs point out, *FirstMerit* was decided years before the Fifth Circuit's decisions in *Iberia* and *Banc One*, holding that such provisions were unconscionable under Louisiana and Mississippi law, respectively.

Regardless of these objections, the Court finds the arbitration agreement in this case, even though it permits Vanderbilt to protect its own security interest in the mobile home via the courts, is not unconscionable under Texas law. As said, in *FirstMerit*, the Texas Supreme Court upheld a similarly unequal arbitration clause that bound the plaintiff to arbitrate while not binding the defendant to arbitrate all claims with the plaintiff, 52 S.W.3d at 757–758, and the Texas Supreme Court has subsequently re-affirmed the principle that "arbitration clauses generally do not require mutuality of obligation so long as adequate consideration supports

the underlying contract." *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 233 (Tex. 2008); *see also Palm Harbor*, 195 S.W.3d at 676 ("when an arbitration clause is part of a larger, underlying contract, the remainder of the contract may suffice as consideration for the arbitration clause").

Moreover, the holding in *FirstMerit* is also supported by the decisions of other federal courts. *See*, e.g., *United States ex rel. Gillette Air Conditioning Co. v. Satterfield & Pontikes Constr.*, 2010 WL 5067683, 2010 U.S. Dist. LEXIS 128966 (W.D.Tex. Dec. 7, 2010) (finding arbitration clause permitting construction company to unilaterally decide whether to arbitrate not unconscionable); *see also Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 183 (3d Cir.1999) ("the mere fact that Green Tree retains the option to litigate some issues in court, while the Harrises must arbitrate all claims does not make the arbitration agreement unenforceable."); *Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp.*, 878 F.2d 167, 168–69 (6th Cir.1989) (upholding arbitration clause providing that "[e]xcept as otherwise specifically provided for in this Subcontract, any controversy or claim arising out of or relating to this Subcontract, or the breach thereof which is not disposed of by agreement, shall, at the election of Contractor [Minnotte], be settled by arbitration.")

Therefore, the Court finds that this provision of the RIC's arbitration clause, one-sidedly allowing Vanderbilt to pursue litigation at its option, does not render the arbitration agreement substantively unconscionable. *FirstMerit*, 52 S.W.3d at 757–758.

### ii) Selection of Arbitrator

██ Plaintiffs' second basis for finding the arbitration agreement substantively unconscionable is that it allows Vanderbilt to select the arbitrator, albeit with the

consent of Plaintiffs. (D.E. 26 at 20.)[8] Plaintiffs contend that the "consent" provision is rendered meaningless due to the one-sided exemption discussed above, allowing Defendants to choose at any time to litigate instead of submitting the case to an arbitrator. They state: "unless and until Plaintiffs 'consent' to an arbitrator unilaterally selected by Defendants, Defendants do not even agree to arbitrate claims asserted by Plaintiffs." (D.E. 26 at 20.) Plaintiffs also suggest that, by "not bothering" to sign any of the agreements to arbitrate, Defendants were "choosing to leave all of their options open, including a potential agreement that they never agreed to arbitration at all." (D.E. 26 at 21.)

However, Plaintiffs cite no Texas law cases holding that such a selection-with-consent provision renders an agreement suspect. The Third Circuit has addressed and rejected a similar argument for invalidating an arbitration clause that provided that the arbitrator was to be selected by the seller with the consent of the consumer. *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 183–184 (3d Cir.1999). The court explained:

> The Harrises then claim that the arbitration clause is unenforceable because Green Tree does not need to obtain the Harrises' consent in selecting the arbitrator. We note, however, that the language of the arbitration clause does not comport with the Harrises' interpretation of their rights regarding the choice of arbitrator. Rather, the clause provides that the arbitrator will be "selected by us [Green Tree] with the consent of you [the Harrises]." In the event that Green Tree and the Harrises do not

agree on Green Tree's choice of arbitrator, section five of the FAA provides that either party may petition the court to appoint an arbitrator. This provision of the Act provides a safety valve for a party to an arbitration agreement who does not consent to the other party's choice of arbitrator.

*Id.*

Just as in *Harris*, Plaintiffs are protected by section five of the FAA, which provides a mechanism for the court to appoint an arbitrator if the parties are unable to agree. Section 5 provides:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, **then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire,** as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5 (emphasis added). Under this section, if Plaintiffs do not agree to the arbitrator selected by Defendants, or if "for any other reason there shall be a lapse in the naming of an arbitrator," Plaintiffs may petition the Court to appoint one. *See Harris*, 183 F.3d at 183–184; *see also* 9 U.S.C. § 5.[9]

---

8. The Agreement states that claims within its scope shall be resolved "by one arbitrator selected by Seller with Buyer's consent." (D.E. 11, Ex. 1, ¶ 9, Ex. 1–A, p. 3; Ex. 2–A, p. 3; D.E. 12, Ex. 1, ¶ 9, Ex. 1–A, p. 3; Ex. 2–A, p. 3.)

9. In *CMH Homes v. Perez*, where similar claims against CMH Homes were recently submitted to arbitration under the RIC's arbitration clause, this is apparently exactly what happened. 340 S.W.3d 444, 446–47 (Tex. 2011). After the parties could not agree on

Thus, this provision, even when read in conjunction with the entire arbitration clause, does not render the agreement so one-sided as to be deemed substantively unconscionable. *See Harris,* 183 F.3d at 183–184; *see also Palm Harbor Homes, Inc.,* 195 S.W.3d at 678.

### 2. Dispute Falls Within Scope of Arbitration Agreement

Having determined that the parties entered a valid agreement to arbitrate all aspects of this dispute, the Court must also decide whether Plaintiffs' claims fall within the scope of the arbitration agreement. *Tittle,* 463 F.3d at 418. Plaintiffs' claims for, *inter alia,* fraud and wrongful debt collection, appear to easily fall within the scope of the arbitration clause contained in the RIC's obligating the Plaintiffs to make payments on their mobile homes. The arbitration clause states that "[a]ll disputes, claims or controversies arising from or relating to this contract, or the subject hereof … shall be resolved by mandatory binding arbitration [.]" (D.E. 11, Ex. 1; D.E. 12, Ex. 1.) It further states that "all disputes arising under case law, statutory law and all other laws including, but not limited to, all contract, tort and property disputes will be subject to binding arbitration in accord with this contract." (*Id.*)

■ "[C]ourts distinguish 'narrow' arbitration clauses that only require arbitration of disputes 'arising out of' the contract from broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the contract." *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.,* 139 F.3d 1061, 1067 (5th Cir.1998). "Broad arbitration clauses … are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Id.*

■ Despite these broad standards, Plaintiffs contend their claims do not "arise from" or even "relate to" the RIC, but rather arise from and relate to Defendants' alleged mass filing of the releases of the liens years after the RIC's were executed. The primary legal issue to be decided, they contend, is the legal effect of the releases on the Plaintiffs' debts, rather than the meaning of the language of the RIC itself. (D.E. 26 at 21.) However, according to Plaintiffs' own allegations, the releases had the effect of releasing the Plaintiffs' debts, not merely the liens securing their debts. (D.E. 1 at 2.) Their debts clearly both "arise from" and "relate to" the RICs, the documents creating those debts. Even under a narrow reading of the terms "arising from" or "relating to," the parties' dispute falls within the scope of the arbitration clause. *Pennzoil,* 139 F.3d at 1067.[10]

an arbitrator, the trial judge intervened and appointed an arbitrator to preside over the dispute. *Id.* CMH Homes filed an interlocutory appeal challenging the court's order appointing an arbitrator. *Id.* The court of appeals dismissed the interlocutory appeal for lack of jurisdiction, finding that Texas Civil Practice and Remedies Code section 51.016 does not allow an interlocutory appeal of an order appointing an arbitrator. *Id.* Without deciding whether the trial judge improperly appointed an arbitrator, the Texas Supreme Court found the appeal was properly submitted as a petition for writ of mandamus and remanded the case to the court of appeals to decide the issue. *Id.* at 453–54.

10. Plaintiffs' citation to *Jones v. Halliburton Co.,* where the Fifth Circuit noted that the reach of broad arbitration clauses "is not unbounded," does not alter this finding. 583 F.3d 228, 235 (5th Cir.2009). In *Jones,* the Fifth Circuit held that an employee's arbitration agreement did not encompass her claims of sexual assault while she was stationed at company facilities in Iraq. *Id.* at 238–241. However, the court based its ruling on its conclusion that "in most circumstances, a sexual assault is independent of an employment relationship." *Id.* at 236 (citing *Abou-Khalil v. Miles,* No. G037752, 2007 WL 1589456, at *2 (Cal.Dist.Ct.App. 4 June 2007) (unpublished); *Tolliver v. Kroger Co.,* 201

In sum, because the Court finds that there is a valid agreement to arbitrate between the parties and that all aspects of this dispute fall within the scope of the arbitration agreement, the Court grants Defendants' motions to compel arbitration. 9 U.S.C. § 4; *see also Webb v. Investacorp, Inc.,* 89 F.3d 252, 258 (5th Cir. 1996).[11] The individual claims asserted by Plaintiff Yvonne Hafer as well as the counter-claims asserted by Vanderbilt against Hafer are to be decided by binding arbitration. The individual claims asserted by Plaintiffs Timothy Jones, Katherine Jones and Christy Jones are also to be decided by binding arbitration. The Clayton parties shall bear the cost of arbitration, and the venue for arbitration shall be Corpus Christi, Texas. (D.E. 39 at 10, n. 14.)

In addition, because the Court is satisfied that this lawsuit is referable to arbitration under the parties' agreement, the Court stays this action pending the arbitration proceedings. 9 U.S.C. § 3.[12]

## IV. Conclusion

For the reasons stated above, Defendants' motions to compel arbitration are hereby GRANTED. The individual claims asserted by Plaintiff Yvonne Hafer as well as the counter-claims asserted by Vanderbilt against Hafer are to be decided by binding arbitration. 9 U.S.C. § 4. The individual claims asserted by Plaintiffs Timothy Jones, Katherine Jones and Christy Jones are also to be decided by binding arbitration. § 4. As agreed, the Clayton parties shall bear the cost of arbitration, and the venue for arbitration shall be Corpus Christi, Texas. In addition, because the Court is satisfied that this lawsuit is referable to arbitration under the parties' agreement, the Court stays this action pending the arbitration proceedings. § 3.

---

W.Va. 509, 498 S.E.2d 702, 713 (1997)). Here, it cannot be said that the releases—which, again, allegedly released the Plaintiffs' debts under the RICs—were "independent" of the contractual relationship that arose between the parties when the RICs were executed.

11. Other than the issues addressed above, Plaintiffs have not argued that there is any other "external legal constraint" that renders their specific claims unarbitrable. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985).

12. The Court does not hereby rule on the arbitrability of the claims of putative class members. Given that no class has been certified, such a ruling would be premature. *See Whittington v. Taco Bell of America, Inc.,* 2011 WL 1772401, *5 (D.Colo.2011) ("The court finds no procedure or authority under 9 U.S.C. § 4 to compel putative class members, who are not currently before the court and, because a class has not yet been certified, have not even received notice of the litigation, to arbitrate their potential claims against Defendants.")